UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BUILDING AND CONSTRUCTION      )
 TRADES DEPARTMENT, AFL-CIO,   )
                               )
     Plaintiff,                )
                               )
     v.                        )  Civil No. 06-0677 RBW
                               )
ELAINE L. CHAO, SECRETARY      )
 OF LABOR AND SAMUEL W. BODMAN,)
 SECRETARY OF ENERGY,          )
                               )
     Defendants.               )
                               )
_____)

<u>DEFENDANTS' JOINT MOTION TO DISMISS</u>

Defendant Elaine L. Chao, Secretary, United States

Department of Labor, and Samuel W. Bodman, Secretary, United

States Department of Energy, pursuant to Fed. R. Civ. P. 12(b)(1)

and (b)(6), move to dismiss the Complaint for lack of

jurisdiction and failure to state a claim.  In support of this

motion, the Court is respectfully referred to the accompanying

memorandum of points and authorities and exhibit.  A proposed

Order consistent with this motion is attached.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

---

MARINA UTGOFF BRASWELL, DC BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226


Of Counsel:
HOWARD M. RADZELY
Solicitor of Labor

STEVEN J. MANDEL
Associate Solicitor
Fair Labor Standards Division
ANNE PAYNE FUGETT
Senior Attorney
Office of the Solicitor
U.S. Department of Labor


DON W. CROCKETT
Attorney
Office of General Counsel
U.S Department of Energy

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BUILDING AND CONSTRUCTION )
 TRADES DEPARTMENT, AFL-CIO, )
 )
     Plaintiff, )
 )
     v. ) Civil No. 06-0677 RBW
 )
ELAINE L. CHAO, SECRETARY )
 OF LABOR AND SAMUEL W. BODMAN, )
 SECRETARY OF ENERGY, )
 )
     Defendants. )
 )
_____ )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS

### Preliminary Statement

Defendants Secretary of Labor and Secretary of Energy file this Memorandum in support of their Joint Motion to Dismiss. The Secretary of Labor moves to dismiss the first cause of action pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, because there exists no "failure to act" as alleged by the Plaintiff. The Secretary of Labor also moves to dismiss the second cause of action pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, because she had no clear duty to provide the requested relief and Plaintiff is not entitled to mandamus relief concerning matters committed to agency discretion. The Secretary of Labor also moves to dismiss the causes of action seeking

judicial review of the determination by the Department of Energy, pursuant to Fed. R. Civ. P. 12(b)(1), for failure to exhaust administrative remedies.

The Secretary of Energy moves to dismiss the causes of action against him for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  A preliminary determination of Department of Energy contracting officials does not constitute "agency action" subject to judicial review under the Administrative Procedure Act and Plaintiff has failed to exhaust its administrative remedies.

<u>STATEMENT OF THE CASE</u>

Plaintiff, Building and Construction Trades Department, AFL-CIO ("BCT") brought this action seeking  injunctive, mandamus, and declaratory relief, and judicial review of the determinations of the Acting Administrator, Wage and Hour Division ("Wage and Hour"), United States Department of Labor ("DOL"), and of the Secretary of the United States Department of Energy ("DOE"). Specifically, under the Administrative Procedure Act ("APA") at 5 U.S.C. § 706(1), BCT seeks an order directing DOL to complete its consideration of BCT'S request for a determination on the application of the Davis-Bacon Act ("DBA" or "Act") to the construction of three privately financed buildings on land

2

formerly owned by DOE at the Oak Ridge National Laboratory in Oak Ridge, Tennessee and issue a decision.  See Amended Complt. ¶ A, p. 21.  Additionally, BCT asks the Court to declare that DOL's alleged failure to complete its consideration of BCT's request and issue a decision is arbitrary, capricious, an abuse of discretion and contrary to law under the APA at 5 U.S.C. §§ 706(2)(A) and (D).  See Amended Complt. ¶ B, pp. 21-22.  BCT also seeks judicial review of DOL's denial of BCT's request for a determination on DBA coverage of the ORNL project and asks the Court to vacate the decision and declare that the Act applies. See id., ¶¶ C, D, and G, pp. 22-23.

BCT also seeks judicial review of DOE's preliminary determination that the DBA does not apply to a second project, involving the construction of two buildings on land formerly owned by the National Nuclear Security Administration, a division of DOE, within the Y-12 National Security Complex ("Y-12 project"), also located in Oak Ridge, Tennessee.  Amended Complt. ¶ E, p. 22.  In this regard, BCT asks the Court to vacate the DOE's determination, declare that the Act applies to the Y-12 project, and direct DOE to compel its contractor to amend all pertinent agreements to include the Davis-Bacon labor standards provisions.  See Amended Complt. ¶¶ F, H, and I, pp. 22-24.

3

As demonstrated below, all of BCT's claims for relief should be dismissed for lack of jurisdiction and/or failure to state a claim upon which relief can be granted.

A.  Statutory and Regulatory Background

The Davis-Bacon Act, 40 U.S.C. §§ 3141-3148, requires that the advertised specifications for every contract for construction, alteration, or repair of public buildings and works in excess of $2,000 to which the federal government is a party, and which requires the employment of mechanics or laborers, contain a provision stating the minimum wages to be paid the classes of laborers and mechanics employed under the contract. See 40 U.S.C. § 3142(a).  These minimum wages are those determined by the Secretary of Labor to be prevailing for the classes of laborers and mechanics in the geographic locality where the work is to be performed, in accordance with procedures provided by regulation.  See id. at 3142(b); 29 C.F.R. Part 1 (procedures for predetermination of wage rates).

The DBA and pertinent regulations further provide that every covered contract must contain stipulations that contractors and subcontractors shall pay all mechanics and laborers employed directly on the site of the work wage rates not less than those the Secretary of Labor has determined to be prevailing for the

4

classes of laborers and mechanics in the particular locality.
See 40 U.S.C. § 3142(c)(1); 29 C.F.R. § 5.5(a)(1).

Pursuant to Reorganization Plan No. 14 of 1950, 64 Stat.
1267, 15 Fed. Reg. 3176 (1950), 5 U.S.C. App. 242, the Secretary
of Labor has been delegated the authority to interpret and
administer the labor standards provisions of the DBA and the 60
so-called Davis-Bacon Related Acts (listed at 29 C.F.R. § 5.1).
The Reorganization Plan provides that "[i]n order to assure
coordination of administration and consistency of enforcement of
the [Davis-Bacon] labor standards provisions, the Secretary of
Labor shall prescribe appropriate standards, regulations, and
procedures[.]"  See also 40 U.S.C. § 3145 (providing that the
Secretary "shall prescribe reasonable regulations for contractors
and subcontractors engaged in constructing, carrying out,
completing, or repairing public buildings, public works, or
buildings or works that at least partly are financed by a loan or
grant from the Federal Government").

Under the regulatory scheme, the contracting agency has the
responsibility to make the initial determination concerning
whether a particular contract is covered by the DBA.  See
Universities Research Association, v. Coutu, 450 U.S. 754, 760
(1981); see also 29 C.F.R. § 5.5(a) (directing that the agency

head "shall cause or require the contracting officer to insert" the Davis-Bacon labor standards provisions in covered contracts). DOL regulations provide, however, that "[a]ll questions relating to the application and interpretation of wage determinations ... and of [Davis-Bacon] labor standards provisions ... shall be referred to the Administrator [of the Wage and Hour Division] for appropriate ruling or interpretation."  29 C.F.R. § 5.13.

Section 7.9 of the regulations provides "any party or aggrieved person a right to file a petition for review" before the DOL's Administrative Review Board ("ARB" or "Board") of "any final decision in any agency action" under Part 5 of the regulations "within a reasonable time."  29 C.F.R. § 7.9.  The Board has been delegated the final decisionmaking authority of the Secretary.  See 29 C.F.R. § 7.1 (providing that "[i]n considering the matters within the scope of its jurisdiction, the Board shall act as fully and finally as might the Secretary of Labor concerning such matters"); see also Vulcan Arbor Hill Corp. v. Pierce, 1987 WL 10499, at *1, 106 Lab. Cas. (CCH) ¶ 34,911, 34,966 (D.D.C. 1987) (recognizing that under Reorganization Plan No. 14 of 1950, the Secretary of Labor, through the Wage Appeals Board,[1] has final administrative authority with respect to the

---

[1]    The Court in Vulcan Arbor Hill Corp. refers to the ARB's predecessor, the Wage Appeals Board.  In 1996, the ARB assumed the functions of the Wage Appeals Board.  See 61

proper interpretation of the Davis-Bacon and Related Acts);

Paper, Allied-Industrial, Chemical and Energy Workers
International Union and Local No. 8-652, 2005 WL 3263821, at *5,
ARB Case No. 04-033 (Nov. 30, 2005) ("[A]s a matter of law, the
Secretary of Labor and the DOL have primary authority to
interpret the DBA.").

    B. Factual Background

    On July 25, 2001, pursuant to 29 C.F.R. § 5.13, BCT
requested the Acting Administrator of Wage and Hour to make a
determination concerning whether the DBA applied to the
construction of three privately financed buildings on land
formerly owned by DOE at the Oak Ridge National Laboratory
("ORNL") in Oak Ridge, Tennessee ("the ORNL project").  Amended
Complt. ¶ 22, p. 6.  On September 20, 2001 and September 28,
2001, respectively, the DOE and the UT-Battelle Development
Corporation ("Development Corporation"), a not-for-profit
corporation created to implement the financing of the
construction project (id., ¶ 16, p. 5), submitted to DOL position
statements arguing that the DBA did not apply to the project.
Id., ¶ 25, p. 7.

    By letter dated May 13, 2002, Wage and Hour advised BCT that
the agency had requested that DOE submit a full report on the

———————————
    Fed. Reg. 19985 (1996).

facts relating to the matter within 30 days and a statement of
DOE's position on the issue.  Amended Complt. ¶ 26, pp. 7-8.[2]

In January 2003, BCT's President Edward C. Sullivan met with
representatives of Wage and Hour to discuss the status of the
July 25, 2001 request for a DBA coverage determination.  Amended
Complt. ¶ 28, p. 8.  After the meeting, on January 30, 2003,
BCT's President submitted a letter to the Wage and Hour
Administrator responding to the arguments presented by the DOE
and the Development Corporation in their September 2001 letters,
and presenting additional arguments in support of DBA coverage of
the project.  Id., ¶ 29, p. 8.

As the BCT indicates in its Amended Complaint, the plans for
constructing the ORNL project involved a complex funding scheme
that included several "privately financed elements."  Amended
Complt. ¶ 16, p. 5.  Under this plan, UT-Battelle, DOE's
maintenance and operations contractor, created the Development
Corporation to select a private developer to design, construct
and lease the facilities in question.  Id., ¶ 17, pp. 5-6.  The
private developer entered into a "25-year Ground Lease" of the
real property, whereas UT-Battelle would "enter into ten-year
subleases of each of the three buildings with the Development
Corporation."  Id., ¶¶ 18, 19, p. 6.  Under the plan, "DOE

---

[2]    DOE responded to this request on June 28, 2002.

8

conveyed title to the parcel of land on the Oak Ridge Site where
the three buildings would be located by quitclaim deed to the
Development Corporation," reserving "the right to repurchase all
or any part of the land conveyed and any improvements for a
nominal consideration, provided that any subleases had not been
terminated prior to the expiration of the Facility Leases."
Amended Complt. ¶ 21, p. 6.  "Facility Leases" were to be
executed between the Development Corporation and the developer.
Id., ¶ 24, p. 7.

       By letter dated March 26, 2003, Wage and Hour advised BCT
that the agency had requested additional documents from DOE to
ensure thorough consideration of the matter and provide an
appropriate record for appellate review, and assured BCT that the
agency would perform "'a thorough analysis'" and would "'act as
expeditiously as possible upon receipt of the requested
documents'" from DOE.  Amended Complt. ¶¶ 30-31, p. 8, quoting
Wage and Hour's letter.[3]

       BCT responded by letter dated April 14, 2003, pointing out
that the ORNL project was nearing completion, and that it had
submitted its ruling request before the award of the construction
contracts and the commencement of the construction.  BCT urged
Wage and Hour to "draw whatever negative inferences may be

_____

       [3]       DOE responded to this request on July 15, 2003.

appropriate regarding the factual information that was requested from DOE in the event that it is not forthcoming and issue a determination in short order[.]"  Amended Complt. ¶¶ 32-33, p. 9. During the next two years, the ORNL project was completed without Wage and Hour formally responding to BCT's request for a ruling on the ORNL project.  Id., ¶ 34, p. 10.

By letter dated August 1, 2005, after receiving information that DOE was proceeding with a plan for a second construction project at the Oak Ridge site, i.e., the Y-12 project, BCT submitted a request to the Secretary of Labor asking for a determination of the DBA's application to the ORNL project in response to its July 25, 2001 request.  Amended Complt. ¶ 36, p. 10.  By letter dated September 2, 2005, Wage and Hour's Deputy Administrator advised BCT that he had requested DOE to provide Wage and Hour within 21 days with "'specific information'" concerning the proposed Y-12 project "'so that [Wage and Hour] may incorporate this information into [its] review'" of BCT's request concerning the ORNL project.  Id., ¶ 37, pp. 11-12 (quoting the Deputy Administrator's letter) (bracketed matter added by BCT).

The Acting Deputy General Counsel, National Nuclear Security Agency ("NNSA"), DOE, by letter dated October 3, 2005, provided

Wage and Hour's Deputy Administrator  information regarding NNSA's proposed financial and contractual arrangements concerning its Y-12 project. Amended Complt. ¶¶ 38-40, pp. 11-12.[4]  By letter dated October 17, 2005, BCT reiterated its request that Wage and Hour's Deputy Administrator issue a ruling on application of the DBA to the ORNL project.  Id., ¶ 41, p. 12.

On April 14, 2006, BCT brought this action against DOL and DOE.  On April 19, 2006, the Acting Administrator of Wage and Hour issued a letter denying BCT's request for a DBA coverage determination regarding the ORNL project.  Amended Complt. ¶¶ 44-45, pp. 12-13; Defendants' Exhibit 1, attached.  The Acting Administrator noted that BCT, in its October 17, 2005 request, had argued, despite the fact that the ORNL project was completed, that the DBA coverage issue "'remains relevant'" because "'it appears that DOE is contemplating construction of other privately financed buildings on property located on the Oak Ridge reservation formerly known as the Y-12 nuclear weapons plant.'" Defendants' Exhibit 1, p. 1.  The Acting Administrator concluded, however, that "there appears to be no practical need for determining coverage of the ORNL facilities in this instance." Amended Complt. ¶ 44, p. 13; Defendants' Exhibit 1.  In reaching

---

[4]    Neither the BCT nor the DOE has asked DOL to rule on whether the DBA applies to the Y-12 project.

this decision, the Acting Administrator discussed the information NNSA submitted on October 3, 2005, noting that NNSA had explained that the Y-12 National Security Complex facilities are separate from the ORNL facilities, and that its proposed transaction at the Y-12 complex was separate from the earlier ORNL project. Defendants' Exhibit 1.  On this basis, the Acting Administrator determined that the coverage issues related to the Y-12 project could differ from those concerning the earlier ORNL project.  <u>Id</u>.

The Acting Administrator's decision also relied on the facts that the ORNL construction was completed, the project's contractual arrangements were "unusual and presented a novel coverage issue," and it appeared that "DOE's determination that the DBA standards did not apply to this construction was made in good faith." Defendants' Exhibit 1, p. 2.  The Acting Administrator explained that, based on these factors, even if Wage and Hour were to conclude that DBA applied to the ORNL project, the agency would not consider it appropriate to require retroactive application of the DBA labor standards provisions to that project, a matter within the Administrator's discretion. <u>Id</u>.

On April 21, 2006, BCT amended its complaint to request review of the Acting Administrator's April 19 decision.

C.   <u>Standards for Dismissal Under Rules 12(b)(1) and 12(b)(6)</u>

A complaint may be dismissed under Rule 12(b)(1) or Rule 12(b)(6) if the plaintiff can prove no set of facts in support of its claim which would entitle it to relief.  <u>See</u> <u>Empagran S.A. v. F. Hoffman-LaRoche, Ltd.</u>, 315 F.3d 338, 343 (D.C. Cir. 2003) (discussing Rule 12(b)(1)); <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1117 (D.C. Cir. 2000) (discussing Rule 12(b)(6)).  In considering dismissal motions under either Rule 12(b)(1) or Rule 12(b)(6), the Court must accept the factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor.  <u>See</u> <u>Totten v. Norton</u>, 2006 WL 708222, at * 4 (D.D.C. 2006) (Rule 12(b)(1)); <u>Harris v. Ladner</u>, 127 F.3d 1121, 1123 (D.C. Cir. 1997) (Rule 12(b)(6)).  The Court, however, need not accept the factual inferences drawn by the plaintiff if they are not supported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions.  <u>See</u> <u>Totten</u>, <u>supra</u> (Rule 12(b)(1)); <u>Kowal v. MCI Communication Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (Rule 12(b)(6)).

The complaint's factual allegations "'will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion[.]'"  <u>Grand Lodge of Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp.2d 9, 13 (D.D.C. 2001), quoting 5A Charles

13

A. Wright & Arthur R. Miller, Federal Practice and Procedure §
1350 (2d ed. 1990). Additionally, the Court may consider matters
beyond the allegations of the complaint in disposing of a Rule
12(b)(1) motion. See Coalition for Underground Expansion v.
Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003); EEOC v. St. Francis
Xavier Parochial School, 117 F.3d 621, 624 n.3 (D.C. Cir. 1997).
"[W]here necessary, the court may consider the complaint
supplemented by undisputed facts evidenced in the record, or the
complaint supplemented by undisputed facts plus the court's
resolution of disputed facts." Herbert v. National Academy of
Sciences, 974 F. 2d 192, 197 (D.C. Cir. 1992) (citations
omitted). See also Coalition for Underground Expansion, 333 F.3d
at 198. Thus, the Court may undertake an independent inquiry to
determine its subject matter jurisdiction. See Haase v.
Sessions, 835 F.2d 902, 908 (D.C. Cir. 1987).

Where a defendant challenges subject matter jurisdiction
under Rule 12(b)(1), the plaintiff bears the burden of
demonstrating jurisdiction by a preponderance of the evidence.
E.g., Research Air, Inc. v. Norton, 2006 WL 508341, at *4 (D.D.C.
2006); Shekoyan v. Sibley International Corp., 217 F. Supp.2d 59,
63 (D.D.C. 2002).

14

<u>ARGUMENT</u>

I.   BCT'S CAUSE OF ACTION UNDER THE APA TO COMPEL AGENCY ACTION
     "UNLAWFULLY WITHHELD" REGARDING THE ORNL PROJECT SHOULD BE
     DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN
     <u>BE GRANTED UNDER RULE 12(b)(6).</u>

BCT's first cause of action rests on DOL's alleged failure
to rule on its DBA coverage request and seeks relief under 5
U.S.C. ¶ 706(1), which authorizes federal courts to "compel
agency action unlawfully withheld or unreasonably delayed."  This
cause should be dismissed under Rule 12(b)(6) for failure to
state a claim upon which relief can be granted because DOL has
not withheld "agency action" within the meaning of the APA.  The
APA provides for judicial review of "[a]gency action made
reviewable by statute and final agency action for which there is
no other adequate remedy in a court."  5 U.S.C. ¶ 704.  Because
the DBA does not provide for judicial review of agency action
under the DBA, final agency action under the Act is reviewed
under the APA.

The APA defines "agency action" to include "the whole or a
part of an agency rule, order, license, sanction, relief, or the
equivalent or denial thereof, or failure to act[.]"  5 U.S.C.
¶ 551(13).  The APA sets forth the relief for a "failure to act"
in 5 U.S.C. ¶ 706(1) ("agency action unlawfully withheld").  <u>See</u>

15

<u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55, 62-63 (2004).

In <u>Norton</u>, a case arising from a suit to compel agency action under the APA, the Supreme Court distinguished between an agency's "failure to act," which is remediable under 5 U.S.C. ¶ 706(1), and a "denial." The Court construed a "failure to act" as an agency's "omission of an action without formally rejecting a request –- for example, the failure to promulgate a rule or take some decision by a statutory deadline." 542 U.S. at 63. The Court, on the other hand, described a "denial" as "the agency's act of saying no to a request." <u>Id</u>. In the instant case, DOL acted when it formally rejected (<u>i.e.</u>, denied) BCT's request for a DBA coverage determination on April 19, 2006. Therefore, no "failure to act" within the meaning of the APA exists for which relief can be granted under 5 U.S.C. § 706(1). DOL's denial of BCT's ruling request rendered BCT's "failure to act" claim moot. Thus, the claim should be dismissed under Rule 12(b)(6).

II. BCT'S CLAIMS FOR MANDAMUS RELIEF TO COMPEL DOL TO ISSUE A COVERAGE RULING SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1).

BCT's second cause of action seeks a writ of mandamus under 28 U.S.C. § 1361 ordering DOL to issue a coverage ruling. Under

16

the federal mandamus statute, 28 U.S.C. § 1361, which authorizes a court to compel a federal official "to perform a duty owed to the plaintiff," jurisdiction "is limited to compelling a Government official or agency to perform a duty owed to the plaintiff or to make a decision, but not to direct or influence the exercise of discretion of the officer or agency in the making of the decision." U.S. Code & Admin. News, 87th Cong. 2d Sess., 2784-85 (1962). The D.C. Circuit has stated that "[t]he necessary prerequisites for this court to exercise its mandamus jurisdiction are that (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." Swan v. Clinton, 100 F.3d 973, 977 n.1 (D.C. Cir. 1996) (citations and internal quotation marks omitted). See also Natural Resources Defense Council v. Johnson, 422 F. Supp.2d 105, 116 (D.D.C. 2006) (same).

As the D.C. Circuit has further explained, "consideration of any and all mandamus actions starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." In re Bluewater Network, 234 F.3d 1305, 1315 (D.C. Cir. 2000). It is limited to situations in which "a federal official has a clear

obligation to perform a ministerial duty," devoid of discretion.
National Wildlife Federation v. United States, 626 F.2d 917, 923
(D.C. Cir. 1980).  See Haneke v. Secretary of Health, Education,
and Welfare, 535 F.2d 1291, 1296 (D.C. Cir. 1976) ("The writ [of
mandamus] should be used only when the duty of the officer to act
is clearly established and plainly defined and the obligation to
act is peremptory.").

    A.   DOL has no clear duty to issue a DBA coverage ruling.

    In this case, there is no clear ministerial duty or
obligation to act.  Neither the DBA nor its implementing
regulations impose an affirmative duty on the Administrator of
the Wage and Hour Division to respond substantively to every
ruling or coverage request that he receives.  There are various
discretionary reasons that would reasonably justify the
Administrator's decision not to issue a substantive ruling.
Here, the Acting Administrator gave several reasons for denying
the request for a coverage ruling:  the coverage issues presented
with respect to the ORNL project were novel and not well-settled;
construction activities on the project were completed before the
issues could be resolved; and DOL would not, under these
circumstances, require retroactive application of the Act.  Thus,
the Acting Administrator rationally concluded that there was "no

18

practical need for determining coverage of the ORNL facilities in this instance."  Defendants' Exhibit 1.

Mandamus is inappropriate here not only because of the lack of a clear statutory mandate, but also because the Acting Administrator's decision not to rule on BCT's DBA coverage request was based, in part, on his non-reviewable determination not to take enforcement action even if coverage of the ORNL project was established.  "The Supreme Court has recognized that certain categories of administrative decisions, including refusals to take enforcement actions, are presumptively outside the bounds of judicial review."  Drake v. Federal Aviation Administration, 291 F.3d 59, 70 (D.C. Cir. 2002), citing Heckler v. Chaney, 470 U.S. 821, 831-34 (1985).  See City of Seabrook v. Costle, 659 F.2d 1371, 1374 (5th Cir. 1981) ("The branches of government charged with investigation of violations of the law and with enforcement of the law have traditionally been afforded broad discretion in carrying out their duties."); Kixmiller v. S.E.C., 492 F.2d 641, 645 (D.C. Cir. 1974) ("An agency's decision to refrain from an investigation of an enforcement action is generally unreviewable.").

In Chaney, the Supreme Court provided the following explanation as to why agency decisions to decline enforcement are

generally unsuitable for judicial review:

> First, an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise.  Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each violation of the statute it is charged with enforcing.  The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

Chaney, 470 U.S. at 831-832.  See Baltimore Gas and Electric Co.

v. Federal Energy Regulatory Comm'n, 252 F.2d 456, 459 (D.C. Cir.

2001) ("Chaney sets forth the general rule that an agency's

decision not to exercise its enforcement authority, or to

exercise it in a particular way, is committed to its absolute

discretion.").[5]

---

[5] Of course, "Chaney held only that an agency's decision not to enforce its regulations is presumptively unreviewable.  Judicial review may be had if Congress has 'indicated an intent to circumscribe agency enforcement discretion, and . . . provide meaningful standards for defining the limits of that discretion.'"  Shoshone-Bannock Tribes v. Reno, 56 F.3d 1476, 1481 (D.C. Cir. 1995), quoting Chaney, 470 U.S. at 834.  Here, the DBA does not provide any guidelines for enforcement of the Davis-Bacon labor standards nor does it circumscribe the Administrator's enforcement discretion in any way.  To the contrary, Reorganization Plan No. 14 of 1950 provides that the Secretary of Labor shall conduct investigations and bring enforcement actions "as he deems desirable."  This is the kind of discretionary authority that the D.C. Circuit has found to preclude rebuttal of the presumption against

(continued...)

As explained previously, the necessity for issuing a coverage ruling in this case had become essentially moot because DOL would not, in the exercise of its discretion, require retroactive application of the DBA, even if it were ultimately to determine that the project were covered.  See 29 C.F.R. § 1.6(f) ("The Administrator may issue a wage determination after [a] contract award or after the beginning of construction if the agency has failed to incorporate a wage determination in a contract required to contain prevailing wage rates determined in accordance with the Davis-Bacon Act.") (emphasis added); Paper, Allied-Industrial, Chemical and Energy Workers International Union and Local No. 8-652, 2005 WL 3263821, at *7 ("DBA regulations permit the Administrator to incorporate DBA wage determinations in covered contracts after a contract is awarded and after work begins."); see also Raytheon Aerospace, 2004 WL 1166284, at *8-11, ARB Case No. 03-017, 03-019 (May 21, 2004) (affirming the Administrator's exercise of discretion not to require retroactive application of a wage determination pursuant to a similar regulatory provision (29 C.F.R. § 4.5(c)(2)) under

---

[5](...continued)
judicial review under Chaney.  See Baltimore Gas and Electric Co., 252 F.3d at 460-61 (Statutory language providing that the agency "may in its discretion bring an action" against a violator "confirms the breadth of the Commission's enforcement discretion.")

the McNamara-O'Hara Service Contract Act, 41 U.S.C. §§ 351 et seq.). Thus, the Acting Administrator's conclusion not to issue a coverage ruling was clearly "inextricably intertwined" with his determination that this was not an appropriate matter for retroactive application and enforcement of the Act.[6] See Drake, 291 F.3d at 71 (applying Chaney where the challenged agency action was "inextricably intertwined with its decision not to issue a compliance order").[7]

B.    BCT has other adequate remedies.

The pleadings in this case also demonstrate that BCT is not entitled to mandamus relief because it has an adequate available remedy, which it has failed to pursue in this case with respect

---

[6]    While enforcement discretion is generally committed entirely to agency discretion and therefore unreviewable, at most the exercise of such discretion would be subject to a limited review under the "arbitrary and capricious" standard in section 706(2)(A) of the APA. See Presinzano v. Hoffman-LaRoche, Inc., 726 F.2d 105 (3d Cir. 1984). Inasmuch as any coverage issues concerning the ongoing construction of the Y-12 project differ from those presented at ORNL, it was entirely reasonable for the Acting Administrator to decide not to expend governmental resources in an attempt to resolve extremely difficult coverage issues related to a project already completed and having no back wage enforcement implications.

[7]  In light of the fact that the ORNL project has been completed, and that the Secretary's decision to decline retroactive enforcement is unsuited for judicial review, BCT's APA argument that the Department of Labor abused its discretion in failing to issue an administrative determination must fail. The issue is now moot.

to the Y-12 project.[8]  "Mandamus is an extraordinary remedy that
is not available when review by other means is possible."
Telecommunications Research and Action Center v. FCC, 750 F.2d
70, 78 (D.C. Cir. 1984) (citations omitted); accord DRG Funding
Corp. v. Secretary of Housing and Urban Development, 76 F.3d
1212, 1216 (D.C. Cir. 1996).

 BCT avers that it "became aware in mid-2004 that DOE was
contemplating an arrangement similar to the one executed for
construction of [the ORNL project]" that would be used for the
construction of a project "within DOE's Y-12 National Security
Complex."  Amended Complt. ¶ 35, p. 10.  The BCT further avers
that "after receiving additional information that indicated DOE
was moving forward with its plan for construction of two
buildings within the Y-12 National Security Complex," it "once
again asked DOL to issue a determination" on the ORNL project.
Id., ¶ 36, p. 10.  According to the BCT's pleadings, "DOE has
determined that the Davis-Bacon Act does not apply to
construction [on the Y-12 project]."  Id., ¶ 66, p. 18.

---

[8] The Secretary of Labor is not raising an exhaustion of
administrative remedies claim with respect to the April 19th
letter, because of the passage of time.  Ordinarily,
however, exhaustion of the determination by the Wage and
Hour Division would be required before judicial review would
be available.

BCT never requested a ruling from the Department of Labor under 29 C.F.R. § 5.13 concerning DBA coverage of the ongoing construction at the Y-12 project. Because the authority to issue final administrative determinations with respect to coverage questions under the DBA and Related Acts lies exclusively with the Department of Labor, and BCT never requested DOL to rule on DBA coverage of construction at the Y-12 project, mandamus relief is unavailable. See generally Vulcan Arbor Hill Corp., 1987 WL 10499, at *1 (describing the Department's mandatory administrative process for reviewing a contracting agency's coverage determination under the Davis-Bacon and Related Acts). This Court, therefore, does not have jurisdiction under the mandamus statute. See Telecommunications Research and Action Center, 750 F.2d at 78 (the mandamus statute does not confer jurisdiction on the district court to compel agency action where review was available in the court of appeals); Haneke, 535 F.2d at 1296 n.15 (among the requirements for obtaining a writ of mandamus is the exhaustion of any available administrative remedy); Natural Resources Defense Council v. Johnson, 422 F. Supp.2d 105, 116 (D.D.C. 2006) (Mandamus "prerequisites are jurisdictional in nature." (citation omitted)).

24

III. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE
     SECRETARY OF ENERGY THAT FALLS WITHIN THE LIMITED WAIVER OF
     SOVEREIGN IMMUNITY PROVIDED BY THE ADMINISTRATIVE PROCEDURE
     ACT.

     The Amended Complaint in this case invokes the APA, 5

U.S.C. § 706(1), as the sole basis for BCT's separate cause of

action against the Secretary of Energy.  The APA provides that:

     A person suffering legal wrong because of agency
     action, or adversely affected or aggrieved by *agency
     action within the meaning of a relevant statute*, is
     entitled to judicial review thereof.

5 U.S.C. § 702 (emphasis added).  As shown below, the Court lacks

jurisdiction to decide the claims alleged in the Amended

Complaint against the Secretary of Energy, because the legal

opinions of DOE contracting personnel responsible for the sale of

the Y-12 land to private developers do not constitute "agency

action" within the meaning of the APA.

     The "relevant statute" in this case is the DBA, which

imposes a requirement on federal agencies to pay prevailing local

wages on all federal contracts "for construction, alteration,

and/or repair . . . of public buildings or public works of the

United States."[9]  40 U.S.C. § 3142.  BCT apparently takes the

position that the DOE employees responsible for the sale of

surplus Y-12 land to the private not-for-profit corporations

_____

     [9]    "The relevant statute, of course, is the statute whose
     violation is the gravamen of the complaint."  Lujan v.
     National Wildlife Fed'n, 497 U.S. 871, 886 (1990).

                              25

violated section 3142 of the DBA when they failed to instruct the management and operating contractor to require the not-for-profit developer to insert a DBA clause in all contracts and subcontracts for the construction of the subject buildings. Amended Complt ¶ 73, pp. 20-21.

The initial legal conclusion of the DOE contracting officials that the two prospective buildings were not covered by the Davis-Bacon Act does not constitute "agency action" within the meaning of the APA.  The Supreme Court has defined "agency action" as follows:

> "Agency action" is a statutory term that identifies the conduct of executive and administrative agencies that Congress intended to be reviewable in federal court. In general, the term encompasses formal orders, rules, and interpretive decisions that crystallize or modify private legal rights.  Agency action that is merely "preliminary, procedural, or intermediate" is subject to judicial review at the termination of the proceeding in which the interlocutory ruling is made.

Federal Trade Commission v. Standard Oil Co. of California, 449 U.S. 232, 247-48 (1990) (concurring opinion, footnotes omitted).

Pursuant to the procedures prescribed by the Secretary of Labor for resolution of disputes under the DBA, the legal conclusions of the DOE employees responsible for the sale of surplus Y-12 land are clearly "preliminary, procedural, or intermediate" because they are subject to administrative review

26

by the Secretary of Labor.    These DBA administrative review

procedures were concisely described by the Supreme Court as

follows:

> Pursuant to Reorganization Plan No. 14 of 1950, 5
> U.S.C. App., p. 746, the Secretary of Labor . . . has
> issued regulations designed to "assure coordination of
> administration and consistency of enforcement" of the
> Act and some 60 related statutes.  See 29 CFR Parts 1,
> 3, 5, 7 (1980).  In their turn, various contracting
> agencies have issued detailed regulations concerning
> the applicability of the Act to the contracts they let.
> See, e.g., 41 CFR Subpart 9-18.7 (1979).  The
> contracting agency has the initial responsibility for
> determining whether a particular contract is subject to
> the Davis-Bacon Act.  See A. Thieblot, The Davis-Bacon
> Act 31 (Labor Relations and Public Policy Series Report
> No. 10 Univ. Of Pa., 1975)[.]  *  *  *  *
>
> The contracting agency's coverage and classification
> determinations are subject to administrative review.
> Prior to the award of a contract, a contractor, labor
> organization, or employee may appeal a final agency
> determination that the project is not covered by the
> Act to the Department of Labor.  29 CFR §§ 5.12
> [presently codified at § 5.13] and 7.9 (1980).

Universities Research Association, supra, 450 U.S. at 759-61

(footnotes omitted).

Indeed, the Amended Complaint itself implicitly acknowledges

that the regulations promulgated by the Secretary of Labor,

pursuant to her authority under the DBA, 29 C.F.R. § 5.13,

require any party dissatisfied with an agency's DBA coverage

determination to bring that dispute before the Wage and Hour

Administrator.  Amended Complt ¶¶ 22, 36, pp. 6, 10.  In turn,

any party seeking to challenge the Administrator's ruling must file an appeal with the Administrative Review Board. See 29 C.F.R. § 7.9. In light of the DOL regulations, there is no question that the opinions of the agency's contracting officials do not constitute a "final order" of the Secretary of Energy that may be reviewed immediately by a federal district court. Accordingly, this Court lacks jurisdiction over the claims alleged against the Secretary of Energy in the Amended Complaint.

IV. THE CLAIMS AGAINST THE SECRETARY OF ENERGY MUST BE DISMISSED FOR BCT'S FAILURE TO EXHAUST THE REQUIRED ADMINISTRATIVE REMEDIES.

The Supreme Court's interpretation of the term "agency action" to mean "final action" and not "preliminary, procedural or intermediate" action, also reflects and incorporates the fundamental principle that a plaintiff must exhaust its administrative remedies before seeking intervention by the federal district courts. As the Supreme Court has held, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." McKart v. United States, 395 U.S. 185, 193 (1969), quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938).

By commencing the instant civil action against the Secretary of Energy, BCT has attempted to circumvent the prescribed procedures for administrative review before the Secretary of Labor.  As demonstrated by the facts alleged by BCT in its Amended Complaint, the Secretary of Energy has no role whatsoever in those administrative proceedings.  Consequently, BCT must follow the prescribed administrative path and obtain a final order from the Secretary of Labor before attempting to involve the federal courts in this dispute.

Indeed, BCT had no basis whatsoever for commencing this civil action against the Secretary of Energy without having first sought a formal determination from the Wage and Hour Administrator with respect to any particular construction contracts concerning the Y-12 project.  The Wage and Hour Administrator's letter to BCT, dated April 19, 2006, made clear that the Administrator had made no determination with respect to the Y-12 project and stated that "you are not precluded from requesting a WHD ruling regarding DBA coverage of any proposed or ongoing construction contracts at the Y-12 complex."[10]

---

[10]     Accordingly, plaintiff has not properly requested the Wage and Hour Administrator to issue a DBA determination with respect to the construction contracts for the Y-12 project.

Defendants' Exhibit 1.  See, e.g., Vulcan Arbor Hill Corp.,

supra.  As this court in that similar situation held:

> Contrary to plaintiffs' contention, the policies
> favoring exhaustion of administrative remedies are
> applicable to this action.  First while not every one
> of plaintiffs' claims asserted in this case is
> necessarily within the jurisdiction or expertise of the
> Secretary of Labor or its administrative arm, the Wage
> Appeals Board, a decision by the Wage Appeals Board
> reversing the determination of the Wage and Hour
> Administrator would obviate the need for this action.
> * * * *
> Application of the exhaustion doctrine in this case,
> therefore, would promote judicial economy, of the
> policies underlying that doctrine.  *Andrade v. Lauer,*
> 720 F.2d 1475, 1484 (D.C. Cir. 1984).

1987 WL 10499, at *1 (footnote omitted).

Here, as in Vulcan Arbor Hill, BCT must first exhaust its

administrative remedies before the Secretary of Labor with

respect to the Y-12 project prior to instituting an action in

federal district court which may be mooted by a favorable DOL

decision.

<u>CONCLUSION</u>

For the foregoing reasons, this civil action against DOL and DOE should be dismissed.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. – Civil Division
Washington, D.C. 20530
(202) 514-7226


Of Counsel:

HOWARD M. RADZELY
Solicitor of Labor

STEVEN J. MANDEL
Associate Solicitor
Fair Labor Standards Division
FORD NEWMAN
Counsel for Contract
 Labor Standards
ANNE PAYNE FUGETT
Senior Attorney
Office of the Solicitor
U.S. Department of Labor

DON W. CROCKETT
Attorney
Office of General Counsel
U.S Department of Energy

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BUILDING AND CONSTRUCTION          )
 TRADES DEPARTMENT, AFL-CIO,       )
                                   )
      Plaintiff,                   )
                                   )
      v.                           ) Civil No. 06-0677 RBW
                                   )
ELAINE L. CHAO, SECRETARY          )
 OF LABOR AND SAMUEL W. BODMAN,    )
 SECRETARY OF ENERGY,              )
                                   )
      Defendants.                  )
                                   )
_____   )

<u>ORDER</u>

Upon consideration of defendants' joint motion to dismiss,

plaintiff's responding opposition, and the entire record, and it

appearing to the Court that the grant of defendants' motion is

just and proper, it is hereby

ORDERED that defendant's motion to dismiss for lack of

jurisdiction and failure to state a claim is granted; and it is

further

ORDERED that this case is dismissed.

_____
UNITED STATES DISTRICT JUDGE