IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BUILDING AND CONSTRUCTION TRADES DEPARTMENT, AFL-CIO, | ) ) ) | Case No. 1:06cv00677/RBW |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| ELAINE L. CHAO, in her official capacity as Secretary of Labor | ) ) ) | |
| and | ) ) | |
| SAMUEL W. BODMAN, in his official as Secretary of Energy | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS

INTRODUCTION

This is an action in which the Building and Construction Trades Department, AFL-CIO

("Building Trades"), seeks judicial intervention to compel the Secretary and lower level officials

of the United States Department of Labor ("DOL") to issue an administrative determination

concerning application of the Davis-Bacon Act to construction of three buildings. These

buildings are used solely and exclusively by the United States Department of Energy ("DOE")

and its contractors and subcontractors. The buildings are located on land formerly owned by

DOE within the boundaries of its Oak Ridge Site in Oak Ridge, Tennessee. Plaintiff Building

Trades also seeks judicial review of a determination by the Secretary of Energy, by and through

lower level DOE officials that the Davis-Bacon Act does not apply to construction of two other

buildings. The buildings, which are also intended for the sole and exclusive use of DOE and its contractors and subcontractors, will be located on land formerly owned by DOE that is within the boundaries of the Oak Ridge Site, known as the Y-12 National Security Complex.

## STATEMENT OF FACTS

On July 25, 2001, plaintiff Building Trades' President Edward C. Sullivan submitted a request to the Acting Administrator of the DOL Wage and Hour Division ("Acting Administrator") pursuant to Section 5.13 of DOL's regulations implementing the Davis-Bacon Act, 29 C.F.R. § 5.13 (2000). President Sullivan's July 25, 2001 letter requested a determination whether the Act applies to construction of the three privately financed buildings on land conveyed by DOE to the UT-Battelle Development Corporation, a non-profit corporation created by DOE's maintenance and operations contractor, UT-Battelle, LLC. AMD. COMPLT. at ¶¶ 11, 16 & 22.

Subsequently, DOE and the Development Corporation, by and through counsel, submitted position statements on September 20, 2001 and September 28, 2001, respectively, in response to the Building Trades' July 25, 2001 letter. These letters argued strenuously that the Davis-Bacon Act does not apply to construction of the three privately financed buildings on land formerly owned by DOE within the Oak Ridge Site. AMD. COMPLT. at ¶ 25.

Notwithstanding the thorough statements of position submitted by DOE and the Development Corporation nearly nine months earlier, the DOL Wage and Hour Division ("Wage and Hour") advised Building Trades' President Sullivan in a letter dated May 13, 2002 that it had once again requested DOE to submit a report within 30 days on the facts relating to the issue raised by President Sullivan's July 25, 2001 letter. Wage and Hour also asked DOE to submit a statement of its position regarding the applicability of the Davis-Bacon Act to construction of the

three privately financed buildings on land formerly owned by DOE and located within the Oak Ridge Site, East Campus. AMD. COMPLT. at ¶ 26. To the best knowledge of the Building Trades, DOE never responded to Wage and Hour's May 13, 2002 request. *Id.* at ¶ 27.[1/]

The Building Trades, having heard nothing further from DOE or Wage and Hour for more than one year, sought a meeting in January 2003 with representatives of Wage and Hour to discuss the status of President Sullivan's July 25, 2001 request for a Davis-Bacon coverage determination. AMD. COMPLT. at ¶ 28. Mr. Sullivan followed up this meeting by submitting a lengthy letter to Wage and Hour Administrator Tammy D. McCutchen dated January 30, 2003, which took issue with the arguments presented by DOE and the Development Corporation in their September 2001 letters. *Id.* at ¶ 29. President Sullivan's letter also presented additional arguments in support of application of the Davis-Bacon Act to construction of the three buildings on land formerly owned by DOE and within the Oak Ridge Reservation. *Ibid.*

Subsequently, Alfred B. Robinson, Jr., Senior Policy Advisor to the Wage and Hour Administrator, advised Building Trades' President Sullivan in a letter dated March 26, 2003 that Wage and Hour had requested DOE to obtain "certain additional documents" in order to "ensure that [Wage and Hour's] consideration of this matter is thorough and provides an appropriate record for potential appellate action." AMD. COMPLT. at ¶ 30. Mr. Robinson assured President Sullivan that "this matter will receive a thorough analysis and [Wage and Hour] will act as expeditiously as possible upon receipt of the requested documents." *Id.* at ¶ 31.

President Sullivan responded to Mr. Robinson in a letter dated April 14, 2003. AMD. COMPLT. at ¶ 32. Mr. Sullivan pointed out that his original request to the Acting Wage and Hour

---

[1/]     Defendants aver in the Memorandum of Points and Authorities in Support of Defendants' Joint Motion to Dismiss (hereafter "Def. Mem.") at 8 n.2 that DOE responded to Wage and Hour's request on June 28, 2002; however, neither Wage and Hour nor DOE shared DOE's response with the Building Trades.

Administrator for a Davis-Bacon coverage determination was submitted well before contracts for construction of the three buildings were awarded and construction was initiated and that it was nearing completion without application of the Davis-Bacon Act. *Id.*. President Sullivan suggested in his April 14, 2003 letter to Mr. Robinson that DOE's failure to submit the recently requested "relevant documents" indicated that DOE might be deliberately obstructing consideration by Wage and Hour of the issue raised by the Building Trades' July 25, 2001 letter. *Id.* at ¶ 33.[2] He also suggested that the Administrator should draw whatever negative inferences may be appropriate regarding the factual information that was requested from DOE in the event that it is not forthcoming and issue a determination in short order so that the procedural rights of the Building Trades, the national and international union with which it is affiliated and the workers they represent would not continue to be denied. *Id.*

Wage and Hour failed and/or refused, however, to respond to the Building Trades' outstanding July 25, 2001 request for a Davis-Bacon coverage determination for the next two years, during which time construction of the three privately financed buildings on the Oak Ridge Site was completed and employees of DOE and UT-Battelle occupied the buildings. AMD. COMPLT. at ¶ 34. During this time, the Building Trades became aware in mid-2004 that DOE was contemplating an arrangement similar to the one executed for construction of the three buildings on the Oak Ridge Site for construction of two other buildings within DOE's Y-12 National Security Complex, which is also located on the Oak Ridge Site. *Id.* at ¶ 35.

The Building Trades, after receiving additional information that indicated DOE was moving forward with its plan for construction of the two buildings within the Y-12 National

---

[2]     Defendants aver that DOE did respond on July 15, 2003 to Mr. Robinson's March 26, 2003 request for information. Once again, however, neither Wage and Hour nor DOE ever provided this information to the Building Trades.

Security Complex, submitted a letter to defendant Secretary of Labor, dated August 1, 2005. AMD. COMPLT. at ¶ 36. President Sullivan's August 1, 2005 letter once again asked Wage and Hour to issue a determination concerning application of the Davis-Bacon Act to the three privately financed buildings on the Oak Ridge Site. *Id.* President Sullivan also indicated in his August 1, 2005 letter that the Building Trades would seek judicial intervention to compel DOL to issue a decision, if necessary. *Ibid.*

In a letter dated September 2, 2005, Alfred B. Robinson, Jr., now Deputy Wage and Hour Administrator, advised President Sullivan that he had requested DOE to provide Wage and Hour within 21 days with "specific information regarding the proposed project at the Y-12 National Security Complex so that [Wage and Hour] may incorporate this information into [its] review of [President Sullivan's] original request." AMD. COMPLT. at ¶ 37. After that, R. Paul Detwiler, Acting Deputy General Counsel, National Nuclear Security Administration ("NNSA"), informed Mr. Robinson in a letter dated October 3, 2005 that NNSA[3] was contemplating the sale of two parcels of real property it owns at the Oak Ridge Site to a private non-profit corporation formed by the City of Oak Ridge Industrial Development Board known as the Oak Ridge Project, LLC. *Id.* at ¶ 38

According to Mr. Detwiler's October 3, 2005 letter, the City of Oak Ridge Industrial Development Board intended to issue "Taxable Lease Revenue Bonds" in order to raise funds that the Board would loan to the Oak Ridge Project, LLC. AMD. COMPLT. at ¶ 39. He further explained that the proceeds from the sale of the bonds would be used to purchase the property from DOE at fair market value and construct two buildings that would be leased by BWXT Y-

_____

[3]     NNSA a semi-autonomous agency that is part of DOE responsible, *inter alia*, for maintaining and enhancing the safety, security, reliability and performance of the United States nuclear weapons stockpile without nuclear testing at numerous sites including the Y-12 National Security Complex, which was formerly known as the "Y-12 Plant." AMD. COMPLT. at ¶ 38.

12, and paid for from its annual funding from NNSA under its contract to manage and operate the Y-12 National Security Complex. *Id.* Mr. Detwiler further stated in his October 3, 2005 letter, "[a] quitclaim deed for the property sale has been drafted and reviewed by both DOE and by OMB [Office of Management and Budget]. *Id.* at ¶ 40. Under the terms of the draft deed, NNSA would be able to repurchase the parcels at fair market value under certain defined conditions if it is deemed to be in the best interests of the federal government." *Ibid.*

Building Trades' President Sullivan once again asked Wage and Hour Deputy Administrator Robinson in a letter dated October 17, 2005, to issue a ruling concerning application of the Davis-Bacon Act to construction of the three buildings that were the subject of his July 25, 2001 letter. AMD. COMPLT. at ¶ 41. Additionally, President Sullivan noted in his October 17, 2005 letter that acknowledgement by NNSA Acting Deputy General Counsel Detwiler in his October 3, 2005 letter that construction of other facilities for the benefit and use of DOE was being planned without application of the Davis-Bacon Act demonstrates that the issue raised in his July 25, 2001 letter is capable of repetition and yet once again avoid review. *Id.* at ¶ 42. Accordingly, President Sullivan advised Wage and Hour Deputy Administrator Robinson that the Building Trades would have no other option except to seek judicial review of Wage and Hour's unreasonable delay in acting on his July 25, 2001 request for a ruling unless he received notification that a ruling concerning this matter is forthcoming. *Id.* at ¶ 43.

Finally, on April 19, 2006, five days after the Building Trades filed the above-entitled action, Mr. Robinson, now Acting Wage and Hour Administrator, advised Building Trades' President Sullivan that, because construction of the three buildings on land formerly owned by DOE located within the boundaries of its Oak Ridge Site is completed "there appears to be no practical need for determining coverage of the ORNL facilities in this instance." AMD. COMPLT.

at ¶ 44. However, Mr. Robinson's April 19, 2006 letter did not include a determination whether the Davis-Bacon Act applies to construction of the three buildings on the Oak Ridge Site, as requested by Building Trades President Sullivan in his July 25, 2001 letter. *Id.* at ¶ 45. Instead, Mr. Robinson's April 19, 2006 letter simply concluded that the issue raised in President Sullivan's July 25, 2001 request for a Davis-Bacon coverage determination is moot. *Id.* at ¶ 46.

## STATEMENT OF THE CASE

The Building Trades initiated the above-captioned action by filing a Complaint on April 14, 2006. The Building Trades filed an Amended Complaint on April 21, 2006. The Amended Complaint alleges, *inter alia*, that defendant Secretary of Labor and lower level DOL officials unlawfully refused for four years and nine months to respond to a request submitted by plaintiff Building Trades pursuant to a DOL regulation. The Amended Complaint further alleges that plaintiff Building Trades' letter requested a determination concerning whether the Davis-Bacon Act prevailing wage requirements apply to construction of three privately financed buildings intended for DOE's benefit and use pursuant to long-term leases. The Amended Complaint asks the Court for a mandatory injunction and relief in the nature of mandamus directing defendant Secretary of Labor and lower level DOL officials to complete their consideration of the Building Trades' request and issue a ruling. The Amended Complaint also seeks a declaration that the ongoing failure of defendant Secretary of Labor and lower level DOL officials to render the aforesaid requested determination is arbitrary and capricious, an abuse of discretion, and otherwise contrary to law. Moreover, the Amended Complaint asks for a declaration that the defendant Secretary of Labor's *post hoc* determination that there is no practical need to decide whether the Davis-Bacon Act applies to construction of the three privately-financed buildings on

the Oak Ridge Site is arbitrary and capricious, an abuse of discretion, and otherwise contrary to law as well as a mandatory injunction vacating and setting aside that determination.

In addition, the Amended Complaint seeks judicial review of the failure or refusal of defendant Secretary of Energy, by and through lower level DOE officials, to insure that a provision mandating compliance with the prevailing wage requirement in the Davis-Bacon Act was incorporated in each contract and subcontract for construction of two privately financed buildings on parcels of land formerly owned by DOE and/or NNSA within the boundaries of the Y-12 National Security Complex. The Amended Complaint also seeks a declaration that the Davis-Bacon Act applies to construction of these two buildings. Finally, the Amended Complaint asks the Court to issue a mandatory injunction compelling defendant Secretary of Energy and lower level DOE officials to require its contractor, BWXT Y-12, to amend its agreement or agreements to lease the two buildings by incorporating a stipulation that obliges all contractors and subcontractors engaged to construct these two buildings to pay all mechanics and laborers employed directly on the site of the work in accordance with a provision stating the minimum wages to be paid in accordance with the Davis-Bacon Act.

## APPLICABLE LEGAL STANDARD FOR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

A motion to dismiss pursuant to Rule 12(b)(1), Fed. R. Civ. P., challenges a court's statutory power to adjudicate the case. Once a court's subject matter jurisdiction is called into question, the plaintiff "bears the burden of proving by a preponderance of the evidence that the Court possesses jurisdiction over the subject matter of his claims." *Carter v. Washington Post*, No. 05-1712, 2006 U.S. Dist. LEXIS 29424, *10 (D.D.C. 2006); *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 195 (D.D.C. 2002); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001); *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F. Supp.

2d 15, 19 (D.D.C. 1998).  In reviewing a Rule 12(b)(1) motion to dismiss, this Court must accept all allegations in the complaint as true, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), but the "[C]ourt need not accept legal conclusions as true." *Sierra Club v. Mainella*, No. 04-2012, 2005 U.S. Dist LEXIS 18911, *14 (D.D.C. 2005) (citing *Boyd v. O'Neill*, 273 F. Supp. 2d 92, 95 (D.D.C. 2003)).

In resolving a Rule 12(b)(1) motion, this Circuit has established that the Court is not limited to the allegations in the complaint. *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); *Herbert v. National Acad. of Sciences.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *Grand Lodge*, 185 F. Supp. 2d at 14. The Court may consider material outside the pleadings in its effort to determine whether it has jurisdiction over the case. *Carter*, 2006 U.S. Dist. LEXIS 29424, at *10; *Coalition for Underground Expansion v. Mineta*, 357 U.S. App. D.C. 72, 333 F.3d 193, 198 (D.C. Cir 2003); *St. Francis*, 117 F.3d at 624-25 n.3; *Hohri v. United States*, 251 U.S. App. D.C. 145, 782 F.2d 227, 241 (D.C. Cir. 1986). Indeed, this Court may undertake an independent inquiry to assure itself of its own subject matter jurisdiction without converting the motion to one for summary judgment pursuant to Rule 56, Fed. R. Civ. P. *Haase*, 266 U.S. App. D.C. 325, 835 F.2d at 907-08.

## APPLICABLE LEGAL STANDARD FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., tests the legal sufficiency of the complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d

1033, 1040 (D.C. Cir. 2003) (citing Rule 8(a)(2), Fed. R. Civ. P., and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park*, 348 F.3d at 1040. Thus, in resolving a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences there from in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 67 (D.C. Cir. 2003); *Holy Land Found. For Relief & Dev. v. Ashcroft*, 33 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242 (citing *Conley v. Gibson*, 355 U.S. at 47).

## ARGUMENT

**I.   THE COURT SHOULD DENY DEFENDANTS' JOINT MOTION TO DISMISS THE CLAIMS IN THE AMENDED COMPLAINT AGAINST DEFENDANT SECRETARY OF LABOR.**

Defendants contend that the Court should dismiss the claims against defendant Secretary of Labor because Acting Wage and Hour Administrator Alfred Robinson responded to plaintiff Building Trades' July 25, 2001 request for a Davis-Bacon coverage determination in a letter sent to plaintiff Building Trades' President Edward Sullivan on April 19, 2006. Mr. Robinson's April 19, 2006 letter stated that there was no longer a "practical need for determining [Davis-Bacon] coverage of the [Oak Ridge] facilities," because construction of the three privately financed buildings that prompted his July 25, 2001 request is finished. Def. Mem. at 16. Thus, according to the defendants, the Court should dismiss the claims against defendant Secretary of Labor under Rule 12(b)(6), Fed. R. Civ. P., because no "failure to act" that is remediable under Section

10(a) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), exists for which relief can be granted. *Id.*

Alternatively, defendants maintain that, even if Acting Wage and Hour Administrator Robinson' April 19, 2006 letter does not qualify as a denial of plaintiff Building Trades' request for a Davis-Bacon coverage determination, the claims in the Amended Complaint should be dismissed under Rule 12(b)(1), Fed. R. Civ. P., because defendant Secretary of Labor has no clear duty to issue the requested Davis-Bacon coverage determination. Def. Mem. at 18-22.

The Court should deny defendants' joint motion to dismiss the claims in the Amended Complaint against defendant Secretary of Labor for the following reasons.[4]

### A. The Court Should Deny Defendants' Joint Motion to Dismiss the Claims in the Amended Compliant Against Defendant Secretary of Labor for Failure to State a Claim Upon Which Relief Can be Granted Under Rule 12(b)(6), Fed. R. Civ. P.

The Amended Complaint alleges that defendant Secretary of Labor and lower level DOL officials violated section 5.13 of DOL's regulations implementing the Davis-Bacon Act, 29 C.F.R. § 5.13 (2005), by unlawfully withholding and unreasonably delaying issuance of a determination within a reasonable time, as required by Section 6(a) of the APA, 5 U.S.C. § 555(b). AMD. COMPLT. at ¶ 48. As such, defendant Secretary of Labor's conduct through lower level DOL officials constitutes agency action unreasonably and unlawfully withheld under

---

[4]    Additionally, notwithstanding that Defendants' Joint Motion to Dismiss asks the Court to dismiss all of the claims asserted in the Amended Complaint, the Memorandum of Points and Authorities in Support of Defendants' Joint Motion to Dismiss does not include an argument that the Court should dismiss the Fifth Cause of Action in the Amended Complaint, which alleges that defendant Secretary of Labor and lower level DOL officials acted arbitrarily and capriciously, abused their discretion, or otherwise acted contrary to law in violation of Sections 10(e)(2)(A) and 10(e)(2)D) of the APA, 5 U.S.C. § 706(2)(A) and 706(2)(D), when they issued an administrative determination on April 19, 2006 that failed to resolve whether the Davis-Bacon Act applies to construction of three privately-financed buildings on DOE's Oak Ridge Site in Tennessee. Accordingly, Defendants' Joint Motion to Dismiss does not challenge the Fifth Cause of Action in the Amended Complaint.

Section 10(e) of the APA, 5 U.S.C. § 706(1). *Id.* at ¶ 49. (First Cause of Action - Mandatory

Injunctive Relief); *see also* AMD. COMPLT. at ¶¶ 52-53 (Second Cause of Action – Relief in the

Nature of Mandamus), AMD. COMPLT. at ¶¶ 55-56 (Third Cause of Action – Declaratory

Judgment); and AMD. COMPLT. at ¶ 58 (Fourth Cause of Action – Violation of the Administrative

Procedure Act).

Defendant Secretary of Labor counters, however, that the claims in the First through

Fourth Causes of Action in the Amended Complaint should be dismissed for failure to state a

claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., because she has not

withheld "agency action" within the meaning of the APA. Def. Mem. at 15. Specifically,

defendant Secretary of Labor argues, "DOL acted when it denied plaintiff Building Trades

request for a Davis-Bacon coverage determination on April 19, 2006." *Id.* at 16 (citing *Norton v.*

*Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (distinguishing between an agency's

"failure to act," which is remediable under Section 706(1) of the APA and a "denial," which is

"the agency's act of saying no to a request.").

However, defendant Secretary of Labor's argument is without merit because it assumes

that Acting Wage and Hour Administrator Robinson's April 19, 2006 letter actually responded to

plaintiff Building Trades' July 25, 2001 request for a Davis-Bacon coverage determination,

which it did not. Instead, Mr. Robinson's letter, which was sent five days after plaintiff Building

Trades filed the above-entitled action, stated that "there appears to be no practical need for

determining coverage of the ORNL facilities in this instance" because construction of the three

buildings has been completed." Aside from being a *post hoc* rationalization for defendant

Secretary of Labor's unlawful and unreasonable failure to respond to plaintiff Building Trades'

July 25, 2001 request for a Davis-Bacon coverage determination, Mr. Robinson's April 19, 2006

letter did not include the requested determination. AMD. COMPLT. at ¶ 45. As such, Mr. Robinson's April 19, 2006 letter begs the issue raised by plaintiff Building Trades' July 25, 2001 request for a Davis-Bacon coverage determination.[5/]

Consequently, allegations in the Amended Complaint that defendant Secretary of Labor and lower level DOL officials failed to issue a Davis-Bacon coverage determination within a reasonable time, which they are obligated to do *under Section 6(a) of the APA*, 5 U.S.C. § 555(b), constitutes agency action unreasonably and unlawfully withheld under Section 10(e)(1) of the APA, 5 U.S.C. § 706(1). Therefore, contrary to defendant Secretary of Labor's argument, the claims in the First through Fourth Causes of Action in the Amended Complaint state a claim upon which relief can be granted. Accordingly, the Court should deny defendant Secretary of Labor's first argument in support of Defendants' Joint Motion to Dismiss.

### B. The Court Should Deny Defendants' Joint Motion to Dismiss the Claims in the Amended Compliant Against Defendant Secretary of Labor for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1), Fed. R. Civ. P.

Defendant Secretary of Labor also contends that the Court lacks subject matter jurisdiction to compel her to issue the Davis-Bacon coverage determination originally requested by plaintiff Building Trades on July 25, 2001 because: (1) she has no clear duty or obligation to

---

[5/] Mr. Robinson's April 19, 2006 letter is an attempt to obfuscate the claim in the Amended Complaint that defendant Secretary of Labor and lower level DOL officials unreasonably and unlawfully withheld agency action in violation of Section 10(e) of the APA. 5 U.S.C. § 706(1). At most, Mr. Robinson's explanation for refusing to issue the Davis-Bacon coverage determination requested five years ago is a *post hoc* rationalization for the agency's inaction, which the Court can address later in the case when it considers whether defendant Secretary of Labor and lower level DOL officials' failure to issue a Davis-Bacon coverage determination in response to plaintiff Building Trades' July 25, 2001 request was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, as alleged in the Amended Complaint. AMD. COMPLT. at ¶ 55.

act, Def, Mem. at 18-22; and (2) plaintiff Building Trades has other adequate remedies available, Def. Mem. at 22-24.

        **1.**   **Defendant Secretary of Labor's Contention is Without Merit That She is Not Obligated to Address Plaintiff Building Trades' Request for a Davis-Bacon Coverage Determination Submitted Pursuant to Her Own Regulations.**

The Amended Complaint alleges, *inter alia*, that defendant Secretary of Labor and lower level DOL officials have failed to comply with their plain legal duty under DOL's implementing regulations and Section 6(a) of the APA, 5 U.S.C. § 555(b), by failing to issue a Davis-Bacon coverage determination within a reasonable time in response to plaintiff Building Trades' July 25, 2001 request. AMD. COMPLT. at ¶ 48. Furthermore, the Amended Complaint alleges this "conduct constitutes agency action unreasonably and unlawfully withheld under Section 10(e)(1) of the APA, 5 U.S.C. § 706(1)." *Id.* at ¶ 49. The Amended Complaint also alleges that defendant Secretary of Labor and lower level DOL officials have acted arbitrarily and capriciously, abused their discretion, or acted contrary to law, within the meaning of Sections 10(e)(2)(A) and 10(e)(2)(D) of the APA, 5 U.S.C. §§ 706(2)(A) and 706(2)(D), by failing to issue the Davis-Bacon coverage determination requested by plaintiff Building Trades on July 25, 2001. *Id.* at ¶ 58. Accordingly, the Amended Complaint asks the Court to issue a mandatory injunction ordering defendant Secretary of Labor and lower level DOL officials to complete their review of the Building Trades' July 25, 2001 request for a Davis-Bacon coverage within 30 days. *Id.* at ¶ 50.

In addition, or in the alternative, the Amended Complaint seeks relief in the nature of mandamus ordering defendant Secretary of Labor and lower level DOL officials to complete their review of plaintiff Building Trades' July 25, 2001 request for a Davis-Bacon coverage determination within 30 days. *Id.* at ¶ 53.

The Amended Complaint alleges alternative bases of federal jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1361 (Mandamus).

### a. *Mandamus Jurisdiction*

Defendants argue that a writ of mandamus is an extraordinary remedy and that plaintiff Building Trades is not able to satisfy the elements required for such relief. Def. Mem. at 16-18. (citing *Swan v. Clinton*, 321 U.S. App. D.C. 359, 100 F.3d 973, 977 n. 1 (D.C. Cir. 1996); *In re Bluewater Network*, 344 U.S. App. D.C. 175, 234 F.3d 1305, 1315 (D.C. Cir. 2000); *National Wildlife Federation v. United States*, 200 U.S. App. D.C. 53; 626 F.2d 917, 923 (D.C. Cir. 1980); *Haneke v. Secretary of Health, Educ. & Welfare*, 175 U.S. App. D.C. 329, 535 F.2d 1291, 1296 (D.C. Cir. 1976)), *cert. denied*, 543 U.S. 1152 (2005); *Nat'l Res. Def. Counsel v. Johnson*, 422 F. Supp. 2d 105, 116 (D.D.C. 2006)).

The Mandamus and Venue Act of 1962, Public Law 87-748, codified in 28 U.S.C. § 1361, provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Similarly, Section 10(e)(1) of the APA allows the Court to compel "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

It is undisputed that a writ of mandamus is an extraordinary remedy, which should only be utilized under exceptional circumstances. *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367, 380 (2004) (citations and quotations omitted); *Chaplaincy of Full Gospel Churches v. Johnson*, 276 F. Supp. 2d 82, 83 (D.D.C. 2003) (citing *Haneke v. Secretary of Health, Educ. & Welfare*, 535 F.2d at 1296). In order to obtain mandamus relief, three conditions must be satisfied: (1) plaintiff has no other adequate means to obtain the remedy he seeks; (2) plaintiff has the burden of showing that his right to the writ is "clear and

indisputable"; and (3) even if the first two requirements are met, the issuing court must be satisfied that the writ is appropriate under the circumstance. *Cheney*, 542 U.S. at 381.

Although the exact interplay between the statutory schemes of the Mandamus and Venue Act of 1962 and the APA has not been thoroughly examined by the courts, the Ninth Circuit noted in *Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Japan Whaling Ass'n v. American Cetacean Society*, 478 U.S. 221, 230, n.4 (1986)), that the Supreme Court has construed a claim seeking mandamus relief under the Mandamus and Venue Act "in essence," as one for relief under Section 10(e)(1) of the APA, 5 U.S.C. § 706(1). Accordingly, the Ninth Circuit elected in *Independence Mining* to analyze the appellee company's entitlement to relief for agency action unlawfully withheld or unreasonably delayed under the APA, even though the complaint sought an order of mandamus under the Mandamus and Venue Act, or an order compelling the Secretary of the Interior to determine the validity of the company's mineral patent claims. *Id.* at 507.

Similarly, the Tenth Circuit, seeking to harmonize the Mandamus and Venue Act with the APA, has held that, since mandamus requires that no other remedy is available and the APA provides a means of challenging unreasonably delayed agency action, technically mandamus is no longer available in such cases. *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997); *Western Shoshone Business Council v. Babbitt*, 1 F.3d 1052, 1059 (10th Cir. 1993). However, the court has also recognized that the mandatory injunction authorized under the APA "is essentially in the nature of mandamus relief." *Mt. Emmons*, 117 F.3d at 1170; *Estate of Smith v. Heckler*, 747 F.2d 583, 591 (10th Cir. 1984). "The two statutes are, after all, merely different means of 'compelling an agency to take action which by law it is required to take.'" *Hernandez-Avalos v. INS*, 50 F.3d 842, 844 (10th Cir. 1995).

Therefore, the Court should analyze plaintiff Building Trades' entitlement to relief under the APA inasmuch as the relief sought in this case is essentially the same whether granted under the Mandamus and Venue Act or the APA.

### b.  *Mandatory Injunctive Relief under the APA.*

Section 10(a) of the APA, 5 U.S.C. § 702, authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." Section 10(c) of the APA, 5 U.S.C. § 704, provides that "final agency action for which there is no other adequate remedy in court [is] subject to judicial review." "Agency action" is defined in APA § 551(13), 5 U.S.C. § 551(13), to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act*." (Emphasis added.) The APA provides relief for a failure to act in Section 10(e)(1), 5 U.S.C. § 706(1): "The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."

In *Southern Utah Wilderness Alliance v. Norton*, 542 U.S. 55, 62 (2004), the Supreme Court found significant that the term "agency action," although including "a failure to act," is defined in the first instance by reference to "a list of five categories of decisions made or outcomes implemented by an agency – 'agency rule, order, license, sanction [or] relief.'" *Id.* at 62 (quoting APA § 551(13)). The Court explained:

> All of those categories involve circumscribed, discrete agency actions, as their definitions make clear: "an agency statement of . . . future effect designed to implement, interpret, or prescribe law or policy" (rule); a "final disposition . . . in a matter other than rule making" (order); a "permit . . . or other form of permission" (license); a "prohibition . . . or taking [of] other compulsory or restrictive action" (sanction); or a "grant of money, assistance, license, authority," etc., or "taking of other action on the application or petition of, and beneficial to, a person" (relief).

*Id.* (quoting 5 U.S.C. §§ 551(4), (6), (8), (10), (11)). The Court then construed the phrase "failure to act" as a failure to take one of the five agency actions earlier defined in APA § 551(13), emphasizing that "the important point is that a 'failure to act' is properly understood to be limited, as are the other items in § 551(13), to a discrete action." *Id.* at 62-63.

The Court also observed in *Southern Utah Wilderness Alliance* that the agency action sought to be compelled must be one that the agency is "legally required" to take -- a limitation reflected in APA § 706(1) authorizing courts to "compel agency action unlawfully withheld." *Id.* at 63. The Court explained that this limitation was carried forward from the use of writs of mandamus under the All Writs Act, 28 U.S.C. § 1651, prior to passage of the APA, and that the "mandamus remedy was normally limited to enforcement of 'a specific, unequivocal command,' the ordering of a 'precise, definite act . . . about which [an official] had no discretion whatever.'" *Id.* (citations omitted).

Defendant Secretary of Labor contends that, as clarified in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. at 63, an action to "compel agency action unlawfully withheld" under APA § 706(1) is authorized only if such action is one the agency is "legally required" to take.[6/] Thus, according to the defendants' argument, the Court's subject matter jurisdiction over the claims against defendant Secretary of Labor in this case depends on whether she is "legally required" to issue a Davis-Bacon coverage determination pursuant to plaintiff Building Trades' July 25, 2001 request.

Under the Davis-Bacon Act, 40 U.S.C. § 3141, *et seq.*, bidders on certain construction projects funded by the Federal Government must pay workers specified wage rates based upon

---

[6/] Defendant Secretary of Labor does not argue that the Amended Complaint fails to identify a "discrete agency action" and, therefore, it is uncontested that the first prerequisite for this action to "compel agency action unlawfully withheld" under APA § 706(1) is satisfied.

the type of work performed. *See* 40 U.S.C. § 3142. Congress delegated to defendant Secretary of Labor authority to determine the categories of jobs and the prevailing wage rates for those jobs in the community where the construction project will be undertaken. *See* 29 C.F.R. §§ 1.1 through 1.9 (2006). In addition, Reorganization Plan No. 14 of 1950, 5 U. S. C. App., p. 134, requires defendant Secretary of Labor to "prescribe appropriate standards, regulations, and procedures" to be observed by federal contracting agencies, and directs the Secretary to make "such investigations, concerning compliance with and enforcement of such labor standards, as he deems desirable." Pursuant to this authority defendant Secretary of Labor has issued regulations designed to "assure coordination of administration and consistency of enforcement" of the Act and some 60 related statutes. *See* 29 CFR Parts 1, 3, 5, 7 (2006).

The Message of the President accompanying Reorganization Plan No. 14 of 1950 made clear, however, that the federal contracting agencies, including DOE, retain the primary responsibility for investigating violations and enforcing the Davis-Bacon Act. 5 U. S. C. App., p. 134-36. *See* 29 CFR § 5.6 (2006); Elisburg, WAGE PROTECTION UNDER THE DAVIS-BACON ACT, 28 Lab. L. J. 323, 326-327 (1977). Notwithstanding, the contracting agency's coverage determinations are subject to administrative review.

Pursuant to Section 5.13 of defendant Secretary of Labor's regulations implementing the Davis-Bacon Act, 29 C.F.R. § 5.13 (2005), a contractor, labor organization, or employee that disagrees with a contracting agency's determination concerning application or interpretation of the Act can ask the Wage and Hour Administrator for "an appropriate ruling or interpretation." In turn, any "party or aggrieved person" may appeal the Wage and Hour Administrator's Davis-Bacon coverage determination to the Administrative Review Board, to which defendant

Secretary of Labor has delegated authority to make final and binding Davis-Bacon coverage determinations on her behalf. 29 C.F.R. § 7.9 (2006).

The Amended Complaint alleges that the failure of defendant Secretary of Labor and lower level DOL officials to issue the Davis-Bacon coverage determination requested by plaintiff Building Trades on July 25, 2001 pursuant to Section 5.13 of defendant Secretary's regulations is "agency action unlawfully withheld or unreasonably delayed," in violation of Section 10(e)(1) of the APA, 5 U.S.C. § 706(1). AMD. COMPLT. at ¶ 49.

Defendant Secretary of Labor's argument is that "[n]either the [Davis-Bacon Act] nor its implementing regulations (presumably including Section 5.13 of her regulations) impose an affirmative duty on the Administrator of the Wage and Hour Division to respond substantively to every ruling or coverage request that he receives." Def. Mem. at 18. Moreover, she contends that Acting Wage and Hour Administrator Robinson's decision not to issue a Davis-Bacon coverage determination was "based, in part on his non-reviewable determination not to take enforcement action even if coverage of the [Oak Ridge National Laboratory] project was established." *Id.* at 19 (citing *Heckler v. Chaney*, 470 U.S. 821, 831-34 (1985); *Drake v. Federal Aviation Admin.*, 351 U.S. App. D.C. 409, 291 F.3d 59, 70 (D.C. Cir. 2002); *Baltimore Gas and Elec. Co. v. Federal Energy Regulatory Commn.*, 346 U.S. App. D.C. 265; 252 F.3d 456 (D.C. Cir. 2001); *City of Seabrook v. Costle*, 659 F.2d 1371, 1374 (5th Cir. 1981); *Kixmiller v. Securities and Exchange Commn.*, 160 U.S. App. D.C. 375, 492 F.2d 641, 645 (D.C. Cir. 1974)).

### (1) Defendant Secretary of Labor and Lower Level DOL Officials are "Legally Required" to Make a Davis-Bacon Coverage Determination.

Defendants assert in the Memorandum of Points and Authorities in Support of Defendants' Joint Motion to Dismiss that "[n]either the [Davis-Bacon Act] nor its implementing

regulations impose an affirmative duty on the Administrator of the Wage and Hour Division to respond substantively to every ruling or coverage request that he receives." Defendants' assertion implies *sub silentio* that the Court lacks subject matter to review the claims against defendant Secretary of Labor, because Section 5.13 of her regulations implementing the Act does not expressly include such an obligation. Aside from turning the "strong presumption that Congress intends judicial review of administrative action" on its head, defendants' contention disregards the basic principle that, at some level, government agencies have a general, non-discretionary duty to process requests like the one submitted by plaintiff Building Trades on July 25, 2001. *Independence Mining Co. v. Babbitt*, 105 F.3d at 507 n. 6 (citing *Marathon Oil v. Lujan*, 937 F.2d 498, 501 (10th Cir. 1991) (citing *Wilbur v. Krushnic*, 280 U.S. 306, 319 (1930) ("Although the parties dispute whether the Secretary's inaction involves a discretionary or ministerial act, we are not convinced that a decision on that issue is dispositive of this case because, at some level, the government has a general, non-discretionary duty to process the applications in the first instance.) In other words, even if the acts were discretionary, the Secretary cannot simply refuse to exercise his discretion. . . .")).

Furthermore, defendants' argument ignores the fact that APA § 555(b) expressly mandates federal agencies to decide matters before them in a reasonable time, and most significantly, Congress has instructed statutory review courts in Section 10(e)(1) of the APA, 5 U.S.C. § 706(1), to compel agency action that has been unreasonably delayed. *Telecommunications Research and Action Center v. Federal Communications Commn.*, 242 U.S. App. D.C. 222, 750 F.2d 70, 79 (D.C. Cir. 1984).

Defendants also argue that plaintiff Building Trades is not entitled to mandamus relief because it has never requested a ruling from DOL concerning application of Davis-Bacon Act

prevailing wage requirements to construction of the two privately financed buildings now under construction in an area called the Y-12 National Security Complex, which is also located within the boundaries of DOE's Oak Ridge Site in Tennessee. Def. Mem. at 22-24. However, plaintiff Building Trades is not seeking mandamus relief with regard to the failure of DOE properly to apply Davis-Bacon prevailing wage requirements to construction of the two buildings in the Y-12 National Security Complex. Instead, the Amended Complaint asks the Court to decide whether defendant Secretary of Energy unlawfully failed to insure that Davis-Bacon prevailing wages will be paid to laborers and mechanics employed to construct the two buildings in the Y-12 National Security Complex, and if so, to issue an appropriate declaratory order and mandatory injunction directing defendant Secretary of Energy and lower level DOE officials to apply the Davis-Bacon Act to construction of those buildings.

This argument is particularly disingenuous inasmuch as defendants also maintain that defendant Secretary of Labor has no clear duty to issue a decision concerning any particular request for a Davis-Bacon coverage determination. Def. Mem. at 18. Therefore, according to defendants' position, plaintiff Building Trades has no choice except to ask defendant Secretary of Labor to issue a Davis-Bacon coverage determination, but she has no corresponding duty to respond to that request. Defendants' argument is similar to the argument made by the man on trial for the murder of his parents who asks the court for mercy because he is an orphan. In any event, the Court should disregard defendants' argument that mandamus relief is inappropriate because plaintiff Building Trades has other adequate remedies available to seek review of defendant Secretary of Energy's decision not to apply the Davis-Bacon Act to construction of two buildings for the use and benefit of NNSA on land within the Y-12 National Security Complex.

For these reasons, defendant Secretary of Labor, by and through lower level DOL officials, has a judicially enforceable duty to issue the Davis-Bacon coverage determination requested by plaintiff Building Trades on July 25, 2001 within a reasonable time after it was submitted.

> **(2) The Acting Wage and Hour Administrator's April 19, 2006 Letter Declining to Seek Retroactive Application of the Davis-Bacon Act to Construction of the Three Privately Financed Buildings Located on DOE's Oak Ridge Site Does Not Insulate His Unlawfully Withheld and Unreasonably Delayed Ruling on Plaintiff Building Trades' July 25, 2001 Request for a Davis-Bacon Coverage Determination.**

Defendants argue that the Court lacks subject matter jurisdiction over the claims against defendant Secretary of Labor in the Amended Complaint because Acting Wage and Hour Administrator Alfred Robinson's April 19, 2006 decision not to issue a ruling on plaintiff Building Trades' July 25, 2001 request for a Davis-Bacon coverage determination "was based, in part, on his non-reviewable determination not to take enforcement action even if coverage of the [Oak Ridge National Laboratory] project was established." Def, Mem. at 19. As such, defendants contend that Mr. Robinson's letter represents an exercise of prosecutorial discretion, which is a category of administrative decisions that is presumptively outside the bounds of judicial review. *Id.* (citing *Heckler v. Chaney*, 470 U.S. at 831-34). Specifically, defendants assert that Mr. Robinson's decision not to rule on plaintiff Building Trades' July 25, 2001 request for a Davis-Bacon coverage determination "was clearly 'inextricably intertwined' with his determination that this was not an appropriate matter for retroactive application and enforcement of the [Davis-Bacon] Act." *Id.* at 22 (citing *Drake v. Federal Aviation Administration*, 291 F.3d at 71).

Defendant Secretary of Labor's "prosecutorial discretion" argument that is based on a mischaracterization of plaintiff Building and Construction Trades' July 25, 2001 request for a

Davis-Bacon coverage determination as a request for enforcement action. As such, the Acting Wage and Hour Administrator's April 19, 2006 letter to plaintiff Building Trades' President Edward Sullivan is a *non sequitur* because it does not follow logically from plaintiff's July 25, 2001 request for a Davis-Bacon coverage determination.

There is no question that Congress delegated to defendant Secretary of Labor broad discretionary authority regarding investigation and enforcement of the Davis-Bacon Act. *See* Def. Mem. at 20 n. 5 ("Reorganization Plan No. 14 of 1950 provides that the Secretary of Labor shall conduct investigations and bring enforcement actions 'as he deems desirable.'"); *see also* Section 5.6 of defendant Secretary of Labor's regulations implementing the Davis-Bacon Act, 29 C.F.R. § 5.6 (2006), which was adopted pursuant to the authority delegated to her by Congress in Reorganization Plan No. 14 of 1950. In fact, defendant Secretary of Labor's enforcement discretion is so broad that her regulations do not even include a procedure pursuant to which interested persons or aggrieved parties can formally petition her to conduct investigations or pursue enforcement actions against suspected Davis-Bacon violators.

On the other hand, Section 5.13 of defendant Secretary of Labor's regulations implementing the Davis-Bacon Act, 29 C.F.R. § 5.13 (2005), mandates that requests for determinations "relating to the application and interpretation of . . . the labor standards provisions of any of the statutes listed in § 5.1 (which includes the Davis-Bacon Act) shall be referred to the [Wage and Hour] Administrator for appropriate ruling and interpretation." In *Drake v. Federal Aviation Administration*, which defendants rely upon, a former flight attendant employed by Delta Airlines filed a written complaint with the FAA against Delta pursuant to the provisions of FAA's regulations, which provide that the FAA Administrator "shall investigate the complaint if reasonable ground appears to the . . . Administrator for the investigation." 291

F.3d at 63 (quoting 49 U.S.C. § 46101(a)(1)). The FAA subsequently informed the former flight attendant that it had found no evidence to support his allegations against Delta and, therefore, there was no need for a hearing. *Id.* at 64-65. The former flight attendant then sought judicial review pursuant to the APA of the FAA Administrator's determination not to conduct an investigation of his allegations.

On appeal from dismissal of his complaint by the District Court below, plaintiff flight attendant attempted to avoid the *Chaney* presumption against judicial review of agency decisions not to commence enforcement action by arguing that he was merely challenging the FAA's *specific findings* that led the agency not to commence an enforcement action. *Drake*, 291 F.3d at 71. In other words, the plaintiff in *Drake* contended that there was "law to apply" in the sense indicated by the Supreme Court in *Overton Park*, because the agency had made specific findings to support its judgment and these findings were subject to judicial review under APA § 706(2)(A). *Id.* Notwithstanding, the court rejected this argument explaining, in part:

> First, it is clear that the FAA's factual findings were ***inextricably intertwined*** with its decision not to issue a compliance order against Delta. In other words, the FAA's decision that the facts did not show a violation of Part 40 was inseparable from its decision to take no further prosecutorial action against the carrier. This is not to suggest that such agency findings are never subject to judicial review. Instead, our point is that when, as here, such determinations are a prerequisite to an enforcement action, we would read *Chaney* far too narrowly to conclude that a challenge to the adequacy of agency findings is not in substance a challenge to the agency's refusal to enforce.

*Id.* (Emphasis added.)

Defendants in this case maintain that, like the challenge to the adequacy of the FAA's specific findings in *Drake*, the claims against defendant Secretary of Labor seeking to compel her to issue the Davis-Bacon coverage determination requested by plaintiff Building Trades on July 25, 2001 are in substance a challenge to her refusal to enforce the Act. However, this case is

markedly different from the claim in *Drake* and other cases in which the D.C. Circuit has declined to exercise subject matter jurisdiction over "reviewable" reasons provided by administrative agencies for otherwise unreviewable non-enforcement decisions. *See e.g.*, *Safe Energy Coalition of Michigan v. U.S. Nuclear Regulatory Commn.*, 275 U.S. App. D.C. 355, 866 F.2d 1473 (D.C. Cir. 1989) (*Chaney* cannot be evaded by artificially carving out an antecedent legal issue from the basic request for enforcement); *Crowley Caribbean Transport, Inc. v. Pena*, 308 U.S. App. D.C. 374, 37 F.3d 671 (D.C. Cir. 1994) (same).

In each of these cases, the court reasoned that the applicability of *Chaney* depended on the relief sought by petitioner, which in each case was enforcement of a federal statute. *Safe Energy*, 866 F.2d at 1477; *Crowley*, 37 F.3d at 675; *Drake*, 291 F.3d at 70 ("In determining whether a matter has been committed solely to agency discretion, we consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action.").

As already mentioned, there is no procedure pursuant to which an interested person or aggrieved party can petition defendant Secretary of Labor to conduct an investigation or bring an enforcement action against a suspected Davis-Bacon violator. Moreover, plaintiff Building Trades' July 25, 2001 request for a Davis-Bacon coverage determination did not even mention enforcement of the prevailing wage requirements in the event the Wage and Hour Administrator determined that construction of the three privately financed buildings on DOE's Oak Ridge Site are covered by the Act.[2/] Instead, plaintiff Building Trades' July 25, 2001 request for a Davis-

---

[2/]    In resolving a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., the Court may consider material outside the pleadings in its effort to determine whether it has jurisdiction over the case. *Carter v. Washington Post*, No. 05-1712, 2006 U.S. Dist. LEXIS 29424, *10 (D.D.C. 2006); *Coalition for Underground Expansion v. Mineta*, 333 F.3d at 198; *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d at 624-25 n.3;

Bacon coverage determination sought an interpretation by defendant Secretary of Labor, by and through the Wage and Hour Administrator, concerning applicability of the Act to a unique contractual arrangement, which DOE initially decided is not covered by the Act. Consequently, the rebuttable presumption of nonreviewability that an agency's decision not to prosecute or enforce created in *Heckler v. Chaney* is inapplicable in this case.

In *Chaney*, the Court held that the Food and Drug Administration's decision not to take enforcement actions to prevent the use of lethal injections as a means of execution of convicted murderers was not subject to review. *Id.* According to the Court, a decision not to enforce "often involves a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." *Id.* at 831. The Court stated the following reasons in *Chaney* for the general unsuitability of judicial review of enforcement actions:

> The agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

*Id.* at 831-32.

Plaintiff Building Trades' July 25, 2001 request did not ask the Acting Wage and Hour Administrator to decide whether a violation of the Davis-Bacon Act had occurred. Just the opposite, plaintiff Building Trades' July 25, 2001 request for a Davis-Bacon coverage determination has to do with the substantive requirements of the Act. Plaintiff Building Trades'

---

*Hohri v. United States*, 82 F.2d 227, 241 (D.C. Cir. 1986). Accordingly, a copy of plaintiff Building Trades' July 25, 2001 request for a Davis-Bacon coverage determination is attached to a declaration executed by the undersigned counsel for the Building Trades as Plaintiff's Exhibit No. 1.

request does not ask defendant Secretary of Labor to exercise the type of discretionary judgment concerning allocation of enforcement resources that *Chaney* shields from judicial review. *See Edison Elec. Institute v. United States Environmental Protection Agency*, 302 U.S. App. D.C. 60, 996 F.2d 326, 333 (D.C. Cir. 1993) ("Petitioners are not challenging the manner in which the [agency] has chosen to exercise its enforcement discretion . . . Instead, petitioners are challenging the [agency's] interpretation of [the Act] and its implementing regulations . . . Clearly, this interpretation has to do with the substantive requirements of the law; it is not the type of discretionary judgment concerning the allocation of enforcement resources that *Heckler* shields from judicial review."); *National Treasury Employees Union v. Horner*, 272 U.S. App. D.C. 81, 854 F.2d 490, 496 (D.C. Cir. 1988) ("[The agency's] decision to develop some but not other competitive examinations . . . is a major policy decision, quite different from day-to-day agency nonenforcement decisions . . ."); *Kenney v. Glickman*, 96 F.3d 1118, 1123-24, (8th Cir. 1996) (the Secretary of Agriculture's decisions with respect to "zero tolerance" for process defects in red meat but not poultry and with respect to regulations allowing poultry processors to water wash rather than trim contaminants were policy rather than enforcement decisions that were presumed reviewable). Consequently, the explanation in Acting Wage and Hour Administrator Robinson's April 19, 2006 letter for not issuing a Davis-Bacon coverage determination is not "inextricably intertwined" with his non-enforcement determination thereby rendering it unreviewable under *Chaney*.

For the foregoing reasons, defendant Secretary of Labor has a legally enforceable duty to issue the Davis-Bacon coverage determination requested by plaintiff Building Trades five years ago.

III.    **DEFENDANT SECRETARY OF ENERGY'S DECISION TO SELL GOVERNMENT LAND TO A PRIVATE PARTY FOR CONSTRUCTION OF "PUBLIC BUILDINGS OF THE UNITED STATES" WITHOUT INCLUDING A CONTRACTUAL REQUIREMENT THAT SUCH CONSTRUCTION WILL BE COVERED BY THE DAVIS-BACON ACT IS A "FINAL AGENCY ACTION" THAT IS JUDICIALLY REVIEWABLE UNDER THE APA.**

The Amended Complaint seeks judicial review, declaratory judgment, and mandatory injunctive relief regarding the decision by defendant Secretary of Energy, by and through lower level DOE officials, not to include a provision mandating compliance with the prevailing wage requirement of the Davis-Bacon Act in each of the contracts and subcontracts for construction of two buildings on two parcels of land formerly owned by DOE or NNSA, its semi-autonomous agency, in the Y-12 National Security Complex, which is part of the Oak Ridge Site in Tennessee. AMD. COMPLT. at ¶¶ 38, 40, 62-64, 66, 69-70, and 72-73.

Defendants allege in the heading of their Memorandum of Points and Authorities in Support of Defendants' Joint Motion to Dismiss that the Amended Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., because the APA does not waive defendant Secretary of Energy's sovereign immunity inasmuch as his alleged failure to apply the Davis-Bacon prevailing wage requirement to construction of the two buildings in the National Security Complex is not a "final agency action" remediable under the APA. Def. Mem. at 25. However, defendants' argument confuses two separate issues, *i.e.*, "sovereign immunity" and "final agency action."

"The United States, as sovereign, 'is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Fornaro v. James,* 367 U.S. App. D.C. 401; 416 F.3d 63, 66 (D.C. Cir. 2005) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted)). The D.C. Circuit explained in

*Transsohio Savings Bank v. Director, Office of Thrift Supervision*, 296 U.S. App. D.C. 231, 967 F.2d 598, 607 (D.C. Cir. 1993), "[t]he APA excludes from its waiver of sovereign immunity (1) claims for money damages, (2) claims for which an adequate remedy is available elsewhere, and (3) claims seeking relief expressly or impliedly forbidden by another statute." Defendants do not argue that the claims in the Amended Complaint fall under one or more of the limitations on the APA's waiver of sovereign immunity.

Rather, defendants' argument is that the claims in the Amended Complaint against defendant Secretary of Energy fail to state a claim upon which relief can be granted because the alleged actions of lower level DOE officials are not "final agency actions" that are judicially reviewable under the APA. Def. Mem. at 26. Specifically, defendants contend that the "legal conclusions of the DOE employees responsible for the sale of surplus Y-12 land are clearly 'preliminary, procedural, or intermediate' because they are subject to administrative review by the Secretary of Labor." *Id.* at 26-27.

Where, as here, no more specific statute provides for judicial review, the APA empowers the Court to review a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *National Ass'n of Home Builders v. United States Army Corps of Eng'rs*, 368 U.S. App. D.C. 23; 417 F.3d 1272, 1278 (D.C. Cir. 2005) (quoting *Home Builders Ass'n of Greater Chicago v. United States Army Corps of Eng'rs*, 335 F.3d 607, 614 (7th Cir. 2003)). The Supreme Court said in *Bennett v. Spear*, 520 U.S. 154, 177 (1997), "two conditions must be satisfied for agency action to be 'final.'" "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or

from which legal consequences will flow." *Id.* at 177-78 (internal quotation marks & citations omitted).

In other words, an agency action is "final" if, as the Supreme Court has said, it is "'definitive'" and has a "'direct and immediate . . . effect on the day-to-day business'" of the party challenging it. *Federal Trade Comm'n  v. Standard Oil Co.*, 449 U.S. 232, 239 (1980) (quoting & citing *Abbott Labs. v. Gardner*, 387 U.S. at 152); *see also National Ass'n of Home Builders v. United States Army Corps of Eng'rs*, 417 F.3d at 1278; *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 355 U.S. App. D.C. 346, 324 F.3d 726, 731 (D.C. Cir. 2003), or if, as the D.C. Circuit has said, "it imposes an obligation, denies a right or fixes some legal relationship." *Reliable Automatic Sprinkler Co.*, 324 F.3d at 731 (citing *Role Models Am., Inc. v. White*, 354 U.S. App. D.C. 425, 317 F.3d 327, 331-32 (D.C. Cir. 2003)).

There can be little doubt that under these standards, defendant Secretary of Energy's decision, by and through lower level DOE officials, to convey to Oak Ridge Project, LLC by quit claim deed two parcels of land located in the area of the Oak Ridge Site known as the Y-12 National Security Complex without including a requirement that Davis-Bacon prevailing wages will be paid to laborers and mechanics employed to construct two buildings on the land qualifies as a "final agency action" within the meaning of that term under the APA.

Plainly, conveyance by DOE's NNSA of the two parcels of land to Oak Ridge Project, LLC "marks the consummation of [defendant Secretary of Energy's] decisionmaking process." *Bennett*, 520 U.S. at 178. There is nothing "tentative" or "interlocutory" about conveyance of real property owned by a federal agency to a private party with the understanding and expectation that the purchaser will contract for construction of two buildings that will be leased back by NNSA's maintenance and operations contractor, BWXT Y-12 and its successors, for as

long as twenty (20) years for NNSA's DOE's exclusive benefit and use. AMD. COMPLT. at ¶¶ 63-65. On the other hand, defendants argue that defendant Secretary of Energy's determination that Davis-Bacon prevailing wage requirements are inapplicable to construction of these two buildings is "preliminary, procedural, or intermediate" because plaintiff Building Trades has failed to exhaust the administrative appeal process created by defendant Secretary of Labor pursuant to her authority under Reorganization Plan No. 14 of 1950. Def. Mem. at 26-28.

However, the D.C. Circuit rejected this kind of an argument in *National Ass'n of Home Builders v. U.S. Army Corps of Engineers*, in which a government agency argued that a party whose activities do not meet the conditions set by nationwide general permits issued by the agency pursuant to the Clean Water Act, which authorize discharge of "dredged or fill material," has not been denied anything until he has exhausted all of his permit options available under the agency's regulations. The D.C. Circuit explained:

> If the issuance of the [nationwide general permits] had merely altered the procedural framework for obtaining the Corps' permission to discharge fill or dredged material into navigable waters, the district court's reasoning—now advanced by the intervenors—might be sound.
>
>        *           *           *           *           *
>
>     But the [nationwide general permits] do not simply work a change in the Corps' permitting procedures, thereby disadvantaging some within the class of would-be dischargers. The [nationwide general permits] are not a definitive, but otherwise idle, statement of agency policy—they carry easily-identifiable legal consequences for the appellants and other would-be dischargers. Admittedly, our precedent announces no self-implementing, bright-line rule in this regard; the finality inquiry is a "pragmatic" and "flexible" one. *See, e.g., Ciba-Geigy Corp. v. EPA*, 255 U.S. App. D.C. 216, 801 F.2d 430, 435-36 (D.C. Cir. 1986) ("We are to apply the finality requirement in a 'flexible' and 'pragmatic' way." (quoting & citing *Abbott Labs.*, 387 U.S. at 149-50)). Nevertheless, if an EPA directive forbidding the use of third-party human test data to evaluate pesticides' effects constituted final agency action subject to judicial review before the EPA invoked it against any pesticide applicant, *see CropLife Am. v. EPA*, 356 U.S. App. D.C. 192, 329 F.3d 876, 881-83 (D.C. Cir. 2003), and a Federal Communications Commission decision putting the burden on telephone companies to show their entitlement to certain costs was suitable for judicial review before any telephone

company was denied costs, *see Mountain States Tel. & Tel. Co. v. FCC*, 291 U.S. App. D.C. 207, 939 F.2d 1035, 1041 (D.C. Cir. 1991), the Corps' issuance of [nationwide general permits] likewise satisfies the second prong of the finality test. To our mind, all three constitute challenges to agency action "with legal consequences that are binding on both petitioners and the agency." *CropLife Am.*, 329 F.3d at 882; *see also Mountain States Tel. & Tel. Co.*, 939 F.2d at 1041.

417 F.3d at 1279.

Therefore, "[t]he core question is whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). Here, defendant Secretary of Energy's sale of the two parcels of land in the Y-12 National Security Complex created legal rights and imposed binding obligations insofar as they authorize construction on the two buildings for the exclusive benefit and use of a federal agency without applying Davis-Bacon prevailing wage requirements. The "direct and immediate" consequence of defendant Secretary of Energy's actions for plaintiff Building Trades and the laborers and mechanics employed or seeking employment in the building and construction trades who it represents is not hard to understand: these workers will suffer the legal consequence of defendant Secretary of Energy's failure to include a provision mandating compliance with the prevailing wage provisions of the Davis-Bacon Act in NNSA's quit claim deeds because they face the prospect of being paid less than the minimum prevailing wage under the Davis-Bacon Act.

Plaintiff Building Trades and the laborers and mechanics it represents have two options. They can either ask DOL's Wage and Hour Administrator for a Davis-Bacon coverage determination concerning these two buildings and wait for a ruling, or accept employment on the project without benefit of Davis-Bacon labor standards protection. Either way, defendant Secretary of Energy's sale of the two parcels of land to Oak Ridge Project, LLC, on December 15, 2005 directly affected the rights of plaintiff Building Trades and the laborers and mechanics

it represents. Consequently, defendant Secretary of Energy's actions "impose[] an obligation, deny a right or fix[] some legal relationship." *National Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d at 1280 (quoting *Reliable Automatic Sprinkler Co.*, 324 F.3d at 731).

As a result, defendant Secretary of Energy's sale of land in NNSA's Y-12 National Security Complex to Oak Ridge Project, LLC for construction of two buildings intended for the benefit and use NNSA pursuant to long term leases, without requiring application of the Davis-Bacon Act to such construction activity, is "final agency action," which is judicially reviewable under the APA.

**IV.    PLAINTIFF BUILDING TRADES IS NOT REQUIRED TO EXHAUST DOL'S ADMINISTRATIVE PROCEDURES BEFORE SEEKING JUDICIAL REVIEW OF DEFENDANT SECRETARY OF ENERGY'S DECISION NOT TO REQUIRE PAYMENT OF PREVAILING WAGES PURSUANT TO THE DAVIS-BACON ACT DURING CONSTRUCTION OF TWO BUILDINGS ON LAND FORMERLY OWNED BY DOE FOR THE USE AND ENJOYMENT OF DOE.**

Finally, defendants argue that plaintiff Building Trades "must follow the prescribed administrative path and obtain a final order from the Secretary of Labor before attempting to involve the federal courts in this dispute." Def. Mem at 29. Thus, defendants maintain that plaintiff Building Trades "must first exhaust its administrative remedies before the Secretary of Labor with respect to [application of the Davis-Bacon Act to construction of two buildings on land former owned by DOE located in NNSA's Y-12 National Security Complex] prior to instituting an action in federal district court which may be mooted by a favorable DOL decision." *Id.* at 30 (citing *Vulcan Arbor Hill Corp v. Pierce*, No. 86-2089, 1987 WL 10499, 28 Wage & Hour Cas. (BNA) 731, 106 Lab. Cas. (CCH) ¶ 34,911 (D.D.C., April 23, 1987)).

Notwithstanding defendants' contention, plaintiff Building Trades is not required to exhaust DOL's administrative appeal process before seeking judicial review of defendant Secretary of Energy's decision, by and through lower level DOE officials, not to require payment of Davis-Bacon prevailing wages to the laborers and mechanics employed to construct two buildings in NNSA's Y-12 National Security Complex that was conveyed to a private party. The Amended Complaint alleges that this action was arbitrary and capricious, an abuse of discretion or otherwise not in accordance with law in violation of the Sections 10(e)(2)A) and 10(e)(2)(D) of the APA, 5 U.S.C. §§ 706(2)(a) and 706(2)(D). AMD. COMPLT. at ¶62.

Before the Supreme Court's decision in *Darby v. Cisneros,* 509 U.S. 137 (1993), most federal courts followed the general rule that a party must exhaust available administrative remedies before challenging an administrative action in court. The rule was, for the most part, judicially created. *See Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50-51 (1938). After passage of the APA in 1946, the courts' continued insistence on exhaustion resulted in imposition of a condition on judicial review not found in § 10(c) of the APA, 5 U.S.C. § 704.[8/]

---

[8/] *Vulcan Arbor Hill Corp v. Pierce*, which is cited by defendants as support for their argument that the claims in the Amended Complaint against defendant Secretary of Energy should be dismissed for failure to exhaust administrative remedies, is a good example of the courts' insistence on imposing exhaustion of available administrative remedies as a condition on judicial review not found in Section 10(c) of the APA. In *Vulcan Arbor Hill*, the court dismissed a private developer's action challenging a decision by the Wage and Hour Administrator that construction workers employed on a federally assisted residential rehabilitation project covered by a Davis-Bacon prevailing wage requirement must be paid wage rates in accordance with the prevailing wage rates determined by the Secretary of Labor under the Act. The court applied the general rule that a party must exhaust available administrative remedies before challenging an administrative action in court. Consequently, the court held that the private developer was obligated to file a petition for review with DOL's Wage Appeals Board (now the Administrative Review Board) before seeking judicial review under the APA and dismissed the developer's complaint. The outcome of *Vulcan Arbor Hill* would probably have been different if the court had decided the case after *Darby v. Cisneros*. First, as already discussed hereinabove, DOL's regulations implementing the Davis-Bacon Act lack any provision that renders a challenged administrative decision "inoperative" while an appeal to DOL's Wage Appeals Board (now the

Section 10(a) of the APA, 5 U.S.C. § 702, grants persons "suffering legal wrong because of agency action" a right to judicial review. Except as otherwise provided by law, the APA judicial review provisions in Section 10, 5 U.S.C. § 701(a), apply to all federal agency actions unless a statute precludes judicial review or agency action is committed by law to agency discretion. Neither condition applies here.

With respect to the first exception in Section 10 of the APA, 5 U.S.C. § 701(a)(1), there is a "strong presumption that Congress intends judicial review of administrative action." *Mistick Corp. v. Chao*, 440 F.3d 501, 509 (D.C. Cir. 2006) (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986)). "Only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977) (quoting *Rusk v. Cort*, 369 U.S. 367, 380 (1962)), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

The Davis-Bacon Act contains no provision for judicial review of decisions by the Secretary of Labor or any other federal officer. *Mistick Corp. v. Chao*, 440 F.3d at 509-10; *North Georgia. Bldg. & Constr. Trades Council v. Goldschmidt*, 621 F.2d 697, 707-08 (5th Cir. 1980); *Virginia ex rel. Comm'r, Va. Dep't of Highways & Transp. v. Marshall*, 599 F.2d 588, 592 (4th Cir. 1979). Moreover, the D.C. Circuit and other circuit courts of appeals have held that, other

---

Administrative Review Board) is pending. Second, arguably there is no mandatory requirement in DOL's regulations, which requires parties dissatisfied with a Davis-Bacon coverage determination by the Wage and Hour Administrator to file a petition for review with the Board before seeking judicial review. *See* 29 C.F.R. § 7.9(a) (2006) ("Any party or aggrieved person shall have a right to file a petition for review with the Board . . . within a reasonable time from a final decision in any agency action under part 1, 3, or 5 of [title 29, Code of Federal Regulations]."). Thus, under *Darby v. Cisneros*, it is highly unlikely that the court would have dismissed the private developer's action in *Vulcan Arbor Hill* because he bypassed DOL's administrative appeals process.

than the correctness of wage determinations made by the Secretary of Labor pursuant to the Davis-Bacon Act, the practices and procedures followed by the Secretary and lower level DOL officials in interpreting the Act and regulations promulgated thereunder are subject to the APA's judicial review provisions. *Mistick Corp.*, 440 F.3d at 508; *Virginia Dep't of Highways & Transp*, 599 F.2d at 592; *North Georgia Bldg. & Constr. Trades Council*, 621 F.2d at 707-08; *cf. Universities Research Assn. v. Coutu*, 450 U.S. at 761 n.10 (taking no position on issue but citing *Virginia Dep't of Highways & Transp* and *North Georgia Bldg. & Constr. Trades Council*)).

The second exception to Section 10 of the APA, 5 U.S.C. § 701(a)(2) "is applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Mistick Corp. v. Chao*, 440 F.3d at 509 (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)). The Court indicated in *Overton Park* that the second exception in Section 10 of the APA is a "very narrow exception," which applies only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Overton Park*, 401 U.S. at 410 (quoting S. REP. NO. 79-752 (1945)).

The D.C. Circuit has held that, in determining whether a matter has been committed solely to agency discretion, the court must consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action. *Drake v. Federal Aviation Admin.*, 291 F.3d at 70 (citing *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*, 323 U.S. App. D.C. 1, 104 F.3d 1349, 1353 (D.C. Cir. 1997)). Therefore, it is necessary to understand the Davis-Bacon statutory and regulatory scheme in order to decide whether the matter raised by plaintiff Building Trades' July 25, 2001 request for a Davis-Bacon coverage determination is committed solely to agency discretion.

Congress enacted the Davis-Bacon Act to protect employees rather than contractors, and the correctness of wage determinations made by the Secretary of Labor pursuant to the Act is not subject to judicial review. *United States v. Binghamton Constr. Co.*, 347 U.S. 171, 177 (1954); *see Universities Research Ass'n v. Coutu*, 450 U.S. 754, 761 n.10 (1981) (citing *Binghamton*); *United States v. Grace & Sons, Inc.* 384 U.S. 424, 425 n.1 (1966) (citing *Binghamton*).[9]

However, federal courts may review the Secretary's Davis-Bacon wage determinations for violations of due process or statutory or regulatory violations. *See Virginia ex. rel. Comm'r, Virginia Dep't of Highways & Transp. v. Marshall*, 599 F.2d at 592; *Abhe & Svoboda v. Chao*, No. 04-1973 (D.D.C. Sept. 21, 2005) (citing *Califano*, 430 U.S. at 109 n.4). Moreover, the practices and procedures followed by the Secretary of Labor and lower level DOL officials in interpreting the Davis-Bacon Act and regulations promulgated thereunder are subject to the APA's judicial review provisions. *Mistick Corp. v. Chao*, 440 F.3d at 508; *Virginia Dep't of Highways & Transp*, 599 F.2d at 592; *North Georgia Bldg. & Constr. Trades Council v. Goldschmidt.* 621 F.2d 697, 707-08 (5th Cir. 1980); *cf. Universities Research Assn. v. Coutu*, 450

---

[9]     The *Binghamton* rule also prohibits review of the correctness of the Secretary of Labor's decisions in setting prevailing wage rates for certain job classifications on a project, *see Grace & Sons, Inc.* 384 U.S. at 425 n.1 ("This court has indicated that, as to the wage standards set by the Secretary of Labor, there is no judicial review.") (citing *Binghamton*, 347 U.S. at 177)). It further prohibits review of "the correctness of departmental decisions regarding proper classification of workers." *Tele-Sentry Security, Inc. v. Secretary of Labor*, 1991 U.S. Dist. LEXIS 12184, 119 Lab. Cas. (CCH) P 35,534, 1991 WL 178135, at *4 (D.D.C. 1991); *Nello L. Teer Co. v. United States*, 348 F.2d 533, 539, 172 Ct. Cl. 255 (Ct. Cl. 1965) (explaining that determinations of proper job classifications are not subject to judicial review because such determinations are considered part of the wage determination process); see *Carabetta Enterprises, Inc. v. Harris*, 1979 U.S. Dist. LEXIS 12072, 1979 WL 1907, at *2 (D.D.C. May 30, 1979) (holding that a claim was unexhausted and further unreviewable because "[a] determination of the proper job classification, such as was the issue in this case, is considered to be a part of the wage determination process and is therefore likewise not subject to judicial review."); *see also Coutu*, 450 U.S. at 761 & n.10 (stating the *Binghamton* rule in the context of a contractor's objection to the Secretary of Labor's classification of workers on a Davis-Bacon-covered project).

U.S. at 761 n.10 (taking no position on issue but citing *Virginia Dep't of Highways & Transp* and *North Georgia Bldg. & Constr. Trades Council*).

Thus, judicial review of defendant Secretary of Labor's Davis-Bacon coverage determinations under the APA is neither precluded by statute nor committed by law to agency discretion.

In addition, Section 10(c) of the APA, 5 U.S.C. § 704, describes when persons "suffering legal wrong because of agency action" can exercise this right: when the agency action is "final." For the purpose of judicial review, Section 10(c) treats an "otherwise final" action as final unless the agency requires an appeal "to superior agency authority" and renders the action "inoperative" while the appeal is pending. *Darby v. Cisneros* held that in cases in which the APA applies, requiring a party to exhaust available administrative remedies is not a matter of judicial discretion. Rather, "an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review *and* the administrative action is made inoperative pending that review." 509 U.S. at 154 (emphasis added).

There is no provision in the Davis-Bacon Act that requires a party to exhaust administrative remedies. However, Section 5.13 of DOL's regulations implementing the Davis-Bacon Act, 29 C.F.R. § 5.13 (2005), which was promulgated pursuant to the authority delegated to defendant Secretary of Labor by Congress in Section 1 of the Copeland Anti-Kickback Act, now codified at 40 U.S.C. § 3145(a), and Reorganization Plan No. 14 of 1950, states, in relevant part:

> All questions relating to the application and interpretation of . . . the labor standards provisions of any of the statutes listed in § 5.1 (which includes the Davis-Bacon Act) *shall* be referred to the [Wage and Hour] Administrator for appropriate ruling and interpretation.

Cases are legion affirming the mandatory character of "shall." *See, e.g., United States v. Monsanto*, 491 U.S. 600, 607 (1989); *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61 (1982) (*per curiam*); *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947); *Association of Civilian Technicians v. Federal Labor Relations Authority*, 306 U.S. App. D.C. 68, 22 F.3d 1150, 1153 (D.C. Cir. 1994). "'Shall' is a term of legal significance, in that it is mandatory or imperative, not merely precatory." *Exportal Ltda. v. United States*, 902 F.2d 45, 50 (D.C. Cir. 1990) (quoting *Conoco, Inc. v. Norwest Bank Mason City,* 767 F.2d 470, 471 (8th Cir. 1985); also citing, *Continental Airlines, Inc. v. Department of Transp.*, 272 U.S. App. D.C. 255, 856 F.2d 209, 216 (D.C. Cir. 1988) (mandatory time limits for agency action); *Weil v. Markowitz,* 264 U.S. App. D.C. 381, 829 F.2d 166, 171 (D.C. Cir. 1987) (mandatory sanctions for attorney misconduct); *Association of American R.R. v. Costle*, 183 U.S. App. D.C. 362, 562 F.2d 1310, 1312 (D.C. Cir. 1977) (mandatory rulemaking directive). Accordingly, plaintiff Building Trades agrees that defendant Secretary of Labor's use of the word "shall" in Section 5.13 of her regulations imposes a mandatory obligation on interested persons and aggrieved parties to ask the Wage and Hour Administrator for determinations concerning interpretation or application of the Davis-Bacon Act. Thus, Section 5.13 concededly satisfies the first prong of the test set forth in *Darby v. Cisneros* for determining whether exhaustion of available administrative remedies is required under Section 10(c) of the APA..

However, neither Section 5.13 nor any other provision in defendant Secretary of Labor's regulations implementing the Davis-Bacon Act satisfy the second prong of the *Darby v. Cisneros* test. There is no provision in defendant Secretary of Labor's regulations, which provides a procedure that effectively renders inoperative an initial decision by DOL or any other federal

agency concerning application and interpretation of the Davis-Bacon Act when the Wage and Hour Administrator is asked to review and issue a ruling or determination.[10]

Accordingly, plaintiff Building Trades is not required to exhaust DOL's administrative process before seeking judicial review of defendant Secretary of Energy's decision not to apply Davis-Bacon prevailing wage requirements to construction of two buildings in NNSA's National Security Complex on property formerly owned by NNSA and intended for the benefit and use of NNSA. *Idaho Watershed Project v. Hahn*, 307 F.3d 815, 825-28 (9th Cir. 2002); *San Juan Citizens' Alliance v. Babbitt*, 228 F. Supp. 2d 1224, 1233 (D. Colo. 2002); *cf. Marine Mammal Conservancy, Inc. v. Department of Agriculture*, 328 U.S. App. D.C. 253, 134 F.3d 409, 411 (D.C. Cir. 1998) (agency regulations, which *inter alia* suspend the finality of ALJ decisions pending appeal to the judicial officer, satisfy the second prong of the *Darby v. Cisneros* test for requiring exhaustion of administrative remedies under Section 10(c) of the APA).[11]

---

[10]    In fact, the only means available to parties wishing to render inoperative an initial determination by DOL or any other federal agency concerning application and interpretation of the Davis-Bacon Act is to seek judicial intervention to preserve the *status quo* pending completion of DOL's administrative review process. *See e.g., Associated Builders and Contractors of Texas Gulf Coast, Inc. v. United States Dep't of Energy*, 451 F. Supp. 281 (S.D. Tex. 1978); *North Georgia Building & Constr. Trades Council v. United States Dep't of Transp.*, 399 F. Supp. 58 (N.D. Ga. 1975); *International Union of Operating Engineers Local 627 v. Arthurs*, 355 F. Supp. 7 (W. D. Ok.), *aff'd* 480 F.2d 603 (10th Cir. 1973).

[11]    In *Marine Mammal Conservancy, Inc.*, plaintiff-petitioner, a non-profit corporation, sought judicial review rather than appeal an adverse decision by a Department of Agriculture ALJ to the Department's judicial officer. The Department of Agriculture argued that the court should dismiss the case because the plaintiff-petitioner failed to exhaust available administrative remedies. The Department's rules specifically require that as a condition of judicial review, an aggrieved party must first appeal to the Department's judicial officer. The rules also suspend finality of the ALJ's determination during the period pending appeal. In reaching its conclusion that exhaustion of the Department's administrative remedies is a prerequisite for jurisdiction, the court noted:

> *Darby* held that in cases in which the APA applies, requiring a party to exhaust administrative remedies is not a matter of judicial discretion. Rather, "an appeal to

- 41 -

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Joint Motion to Dismiss.

Respectfully submitted,

TERRY R. YELLIG (D.C. Bar No. 946095)

SHERMAN, DUNN, COHEN, LEIFER & YELLIG, P.C.
900 SEVENTH STREET, N.W.
SUITE 1000
WASHINGTON, D.C. 20001
TELEPHONE NO. (202) 785-9300

Attorneys for Plaintiff Building and Construction Trades Department, AFL-CIO

DATED: JULY 28, 2006

---

'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when agency rule requires appeal before review and administrative action is made inoperative pending review."

134 F.3d at 411 (citing *Darby*, 509 U.S. at 154). Thus, it is clear that the D.C. Circuit applied the two part test created in *Darby v. Cisneros* and concluded in *Marine Mammal Conservancy* that exhaustion of administrative remedies was required before the court would have subject matter jurisdiction to review the agency's decision because the Department of Agriculture's rules satisfied both prongs of the test.