UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                          )
BUILDING AND CONSTRUCTION          )
TRADES DEPARTMENT, AFL-CIO,       )
                                                          )
           Plaintiff,                             )
                                                          )
    v.                                              )    Civil Action No. 06-677  (RBW)
                                                          )
HILDA L. SOLIS, Secretary of Labor,    )
and STEVEN CHU, Secretary of Energy, )
                                                          )
           Defendants.                         )
_____)

**MEMORANDUM OPINION**

The Building and Construction Trades Department, AFL-CIO (the "BCT"), the plaintiff in this civil lawsuit, "seeks judicial intervention to compel . . . the Secretary of Labor . . . to issue an administrative determination concerning application of the Davis-Bacon Act, [40 U.S.C. §§ 3141-44, 3146-47 (2006),] . . . to [the] construction of three buildings intended for the sole and exclusive use of the . . . Department of Energy . . . that has been unreasonably withheld." First Amended Complaint Seeking Mandatory Injunctive Relief for Agency Action Unlawfully Withheld, Declaratory Relief and Review of Agency Action (the "Compl.") ¶ 1.  Additionally, the plaintiff "seek[s] judicial review of a [purported] final agency determination by [the Department of Energy] that the Davis-Bacon Act does not apply to construction of two other buildings intended for the sole and exclusive use of [the Department of Energy]," id., under the Administrative Procedures Act, 5 U.S.C. §§ 551-59, 701-06, 1305, 3105, 3344, 4301, 5335,

5372, 7521 (2006) (the "APA"), and 28 U.S.C. § 1361 (2006), id. ¶ 2.[1]  Both defendants seek to dismiss the plaintiff's claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  After carefully considering the plaintiff's amended complaint, the defendants' joint motion to dismiss, and all submissions made in conjunction with the defendants' joint motion,[2] the Court concludes for the reasons that follow that it must grant the defendants' motion in its entirety, but that the scope of that motion does not encompass all of the claims raised by the plaintiff.

## I. Background

The following facts are alleged in the plaintiff's amended complaint or are matters of public record.  The Davis-Bacon Act, enacted by Congress in 1931 and amended most recently in 2002, provides in pertinent part that "[t]he advertised specifications for every contract in excess of $2,000[] to which the Federal Government . . . is a party[] for [the] construction, alteration, or repair . . . of public buildings . . . which requires or involves the employment of mechanics or laborers shall contain a provision stating the minimum wages to be paid" to those mechanics and laborers.  40 U.S.C. § 3142(a).  "The minimum wages shall be based on the wages [that] the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics" employed on similar projects in the "civil subdivision of the State in which the work is to be performed," id. § 3142(b), and  "[e]very contract" covered by the statute

---

[1]  The plaintiff's amended complaint names Elaine L. Chao and Samuel W. Bodman, the former Secretary of Labor and Secretary of Energy, respectively, as defendants in their official capacities.  The Court has substituted the names of Secretary Solis and Secretary Chu for former Secretary Chao and former Secretary Bodman pursuant to Federal Rule of Civil Procedure 25(d).

[2]  In addition to the plaintiff's amended complaint and the defendants' joint motion to dismiss, the Court considered the following documents in reaching its decision: (1) the Memorandum of Points and Authorities in Support of Defendants' Joint Motion to Dismiss (the "Defs.' Mem."), (2) the Memorandum of Points and Authorities in Opposition to Defendants' Joint Motion to Dismiss (the "Pl.'s Opp'n"), and (3) the Defendants' Joint Reply to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Joint Motion to Dismiss (the "Defs.' Reply").

"must contain stipulations that," inter alia, the "contractor or subcontractor shall pay all mechanics and laborers . . . the full amounts accrued at [the] time of payment, computed at wage rates not less than those stated in the advertised specifications," id. § 3142(c)(1). Under Department of Labor regulations, "[a]ll questions relating to the application and interpretation of wage determinations . . . shall be referred to the Administrator [of the Wage and Hour Division of the Department of Labor]," whose "rulings and interpretations shall be authoritative." 29 C.F.R. § 5.13 (2007).

The plaintiff is "an unincorporated labor organization . . . chartered by the American Federation of Labor-Congress of Industrial Organization . . . and composed of eleven (11) national and international building and construction trade unions." Compl. ¶ 8. The plaintiff "has chartered more than 300 state and local building and construction trades councils," which "consist[] of local building and construction trades unions that collectively represent more than three (3) million workers." Id. "[M]any" of these workers "have been employed or may seek employment by private contractors and subcontractors retained to construct buildings" in Oak Ridge, Tennessee. Id.

"On October 1, 1999," the Department of Energy "entered into a contract with UT-Battelle, LLC ('UT-Battelle') . . . for the maintenance and operation of the Oak Ridge National Laboratory ([the] 'ORNL')" located in Oak Ridge, Tennessee. Id. ¶ 11. In August of 2000, UT-Battelle submitted an infrastructure revitalization project for the ORNL, which would require the "construction of eleven new facilities and renovation of existing [facilities] for the ORNL." Id. ¶ 12. The plan called for the new facilities to be constructed by a private developer, who would then lease the facilities to UT-Battelle for use by the Department of Energy. Id. ¶ 13. The Department of Energy approved this plan on March 21, 2001. Id. ¶ 15.

Shortly thereafter, on April 19, 2001, UT-Battelle formed a new not-for-profit corporation called the UT-Battelle Development Corporation ("UT-Battelle Development") to "implement[] the privately financed elements of the UT-Battelle plan." Id. ¶ 16. UT-Battelle Development solicited proposals "for the design, construction, and lease of . . . three privately funded facilities" in accordance with UT-Battelle's revitalization plan. Id. ¶ 17. Under that plan, the developer selected by UT-Battelle Development would "enter[] into a 25-year [g]round [l]ease of the real property on which the three buildings would be located, with a possible extension of not more than five additional years," id. ¶ 18, and would lease the facilities constructed on that real property to UT-Battelle Development, which would then sub-lease the facilities to UT-Battelle for ten-year terms, id. ¶ 19.

Pursuant to UT-Battelle's revitalization plan, the Department of Energy "conveyed title to the parcel of land" on its site in Oak Ridge "where the three buildings would be located by quitclaim deed to [UT-Battelle Development]" on June 18, 2001. Id. ¶ 21. The quitclaim deed "reserved to [the Department of Energy] the right to repurchase all or any part of the land conveyed and any improvements for a nominal consideration" so long as no sub-leases had been terminated prior to the expiration of UT-Battelle Development's lease on the facilities. Id. This conveyance led BCT president Edward C. Sullivan to submit a request to the Acting Administrator of the Department of Labor Wage and Hour Division "pursuant to 29 C.F.R. § 5.13 for a determination whether the Davis-Bacon Act applie[d] to construction of the three privately-financed buildings on land conveyed by [the Department of Energy] to [UT-Battelle Development]." Id. ¶ 22. Sullivan's letter notwithstanding, UT-Battelle Development proceeded unabated with UT-Battelle's revitalization plan, selecting a developer in August of 2001 and executing a ground lease with the developer that same month. Id. ¶¶ 23-24.

4

"Subsequently, [the Department of Energy] and [UT-Battelle Development] . . . submitted position statements on September 20, 2001, and September 28, 2001, respectively," in which they "argued strenuously that the Davis-Bacon Act [did] not apply to construction of the three privately-financed buildings" on the Department of Energy's former property. Id. ¶ 25. Over six months later, "in a letter dated May 13, 2002," the Department of Labor's Wage and Hour Division responded to Sullivan's inquiry by requesting that the Department of Energy "submit a report within 30 days on the facts relating to the issue raised by [Sullivan's inquiry] and a statement of [the Department of Energy's] position regarding the applicability of the Davis-Bacon Act" to the three facilities under construction pursuant to UT-Battelle's revitalization plan. Id. ¶ 26. "To the best knowledge" of the plaintiff, "[the Department of Energy] never responded" to this request. Id. ¶ 27.

"[H]aving heard nothing further from [the Department of Energy] or [the Wage and Hour Division] for more than one year," the plaintiff "sought a meeting in January [of] 2003 with representatives of [the Wage and Hour Division] to discuss the status of [Sullivan's 2001 inquiry]" regarding the application of the Davis-Bacon Act to the construction of new facilities at the Department of Energy's Oak Ridge site. Id. ¶ 28. "Sullivan followed up this meeting"[3] by submitting "a lengthy letter to Wage and Hour Administrator Tammy D. McCutchen dated January 30, 2003." Id. ¶ 29. In his letter, Sullivan contested the arguments raised by the Department of Energy and UT-Battelle Development in their 2001 letters "and presented additional arguments" in support of his position that the Davis-Bacon Act applied to the three buildings under construction at the Oak Ridge site. Id. ¶ 29.

---

[3] The plaintiff does not explicitly allege in its amended complaint that the Wage and Hour Division of the Department of Labor agreed to and actually did meet with Sullivan as requested, but the Court infers this to be the case based on the plaintiff's allegation that Sullivan submitted a letter to the Wage and Hour Administrator "follow[ing] . . . this meeting." Compl. ¶ 29.

5

Alfred B. Robinson, Jr., the Senior Policy Advisor to the Wage and Hour Administrator, responded to this letter in a correspondence of his own dated March 26, 2003.  Id. ¶ 30.  In that correspondence, Robinson stated that the Department of Labor had asked the Department of Energy to provide additional documents to ensure a thorough review of the matter by the Wage and Hour Division.  Id.  However, as Sullivan pointed out in his reply letter dated April 14, 2003, by that time "construction of the three buildings had begun and was nearing completion without application of the Davis-Bacon Act."  Id. ¶ 32.  Ultimately, the Wage and Hour Division "refused . . . to take any action with regard to [Sullivan's 2001 inquiry] for the next two years, during which time construction of the three buildings was completed."  Id. ¶ 34.

While awaiting final action from the Wage and Hour Division, the plaintiff learned "in mid-2004 that [the Department of Energy] was contemplating an arrangement similar to the one executed for construction of the three buildings" on its site in Oak Ridge "for construction of a production-support complex and another building to house a visitors center, historical exhibits[,] and a 400-seat auditorium within [the Department of Energy's] Y-12 National Security Complex, which is also located on the Oak Ridge [s]ite."  Id. ¶ 35.  After Robinson, "now Deputy Wage and Hour Administrator," asked the Department of Energy to provide information regarding the possibility of a construction project involving the Y-12 National Security Complex at Sullivan's request, id. ¶ 37, R. Paul Detwiler, the Acting Deputy General Counsel for the National Nuclear Security Administration (the "NNSA"), informed Robinson in a letter dated October 3, 2005, "that NNSA was contemplating the sale of two parcels of real property it own[ed] at the [Department of Energy's Oak Ridge site] to a private[,] non-profit corporation," id. ¶ 38, which would use funds raised by the City of Oak Ridge Industrial Development Board "to purchase the property from [the Department of Energy] at fair market value and construct

two buildings that would be leased by [the entity managing the Y-12 National Security Complex] and paid for" by the NNSA, id. ¶ 39. This response led Sullivan to renew his inquiry as to whether the Davis-Bacon Act applied to the buildings constructed pursuant to UT-Battelle's revitalization plan on October 17, 2005. Id. ¶ 41.

Having received no response from Robinson, the plaintiff filed its initial complaint in this Court on April 14, 2006. Five days later, Robinson, "now Acting Wage and Hour Administrator, advised . . . Sullivan that[] because construction of the three buildings" at the Department of Energy's Oak Ridge site was completed, there was no need to determine whether the Davis-Bacon Act applied to the construction contracts for those facilities. Id. ¶ 44. In light of this letter, the plaintiff filed an amended complaint on April 21, 2006.

In its amended complaint, the plaintiff seeks injunctive and declaratory relief against Secretary Solis for the Department of Labor's alleged violations of the APA in failing to issue a determination as to whether the Davis-Bacon Act applied to the three facilities built pursuant to UT-Battelle's revitalization plan. Am. Compl. ¶¶ 47-50, 54-60. It also seeks a writ of mandamus compelling Secretary Solis to issue such a determination pursuant to 28 U.S.C. § 1361. Id. ¶¶ 51-53. Finally, the plaintiff seeks injunctive and declaratory relief against Secretary Chu for the Department of Energy's alleged violations of the APA "by failing to insure that a provision mandating compliance with the prevailing wage requirement in the Davis-Bacon Act is incorporated in each of the contracts and subcontracts" for the facilities and improvements to be built at the Y-12 National Security Complex. Id. ¶ 62; see also id. ¶¶ 68-70 (claiming that a declaratory judgment against Secretary Chu should be entered based on the same facts). The plaintiff also seeks injunctive relief directly under the Davis-Bacon Act. Id. ¶¶ 71-73.

In support of their joint motion to dismiss the plaintiff's amended complaint, the defendants argue that the plaintiff's claims against Secretary Solis arising from the Department of Labor's alleged failure to follow the requirements of 5 U.S.C. § 555(b) (Counts I-III of the amended complaint)[4] should be dismissed because (1) insofar as the plaintiff seeks to "compel agency action unlawfully withheld or unreasonably delayed" pursuant to 5 U.S.C. § 706(1), it fails to state a claim for relief now that the Department of Labor has made a determination about the merits of the plaintiff's request with Robinson's April 19, 2006 letter, Defs.' Mem. at 15-16, and (2) insofar as it seeks a writ of mandamus compelling Secretary Solis to fulfill her obligations under § 555(b), the plaintiff does not satisfy the stringent criteria for the issuance of the writ, id. at 16-24. Further, the defendants argue that the plaintiff's claims against Secretary Chu under the APA (Counts VI-VII of the amended complaint) should be dismissed because the plaintiff purportedly (1) does not state a claim that falls within the limited waiver of sovereign immunity provided by the APA, id. at 25-28, and (2) has failed to exhaust the appropriate administrative remedies, id. at 28-30. The defendants do not advance any arguments regarding Counts IV, V, or VIII of the amended complaint.[5]

The plaintiff argues in opposition to the defendants' motion that Robinson's April 19 letter does not constitute an actual response to the plaintiff's request for a Davis-Bacon coverage determination, Pl.'s Opp'n at 11-13, and that the criteria for the issuance of a writ of mandamus

---

[4] The plaintiff actually refers to the "First Cause of Action" through the "Eighth Cause of Action" in its amended complaint. For ease of reference, the Court will refer to the "First Cause of Action" as "Count I," the "Second Cause of Action" as "Count II," and so forth.

[5] The defendants contend that the APA is "the sole basis for [the plaintiff's] separate cause of action against the Secretary of Energy." Defs.' Mem. at 25. This is plainly in error. In Count VIII of the amended complaint, the plaintiffs assert that "by failing to insure that a stipulation was incorporated in each agreement for the lease of two buildings . . . requir[ing] all contractors and subcontractors to pay all mechanics and laborers employed directly on the site of the work in accordance with . . . the Davis-Bacon Act," the "Secretary of Energy and lower[-]level [Department of Energy] officials violated . . . the Davis-Bacon Act." Compl. ¶ 72. The defendants appear to have overlooked this claim in crafting their joint motion to dismiss.

8

as well as mandatory injunctive relief under the APA have been met in this instance, id. at 14-28. It argues strenuously that the Department of Energy's determination that its contracts with the ORNL are not subject to the Davis-Bacon Act constitutes a "final agency action" subject to judicial review under the APA, id. at 29-34, and that exhaustion of administrative remedies is not required for actions under the Davis-Bacon Act, id. at 34-41.  The defendants contest each of these points in their reply memorandum.  Defs.' Reply at 1-13.

## II. Standard of Review

As set forth above, the defendants seek relief pursuant to both Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6).  However, the defendants seek relief under Rule 12(b)(1) against Secretary Solis only with respect to the plaintiff's petition for a writ of mandamus—an argument the Court does not reach on its merits for the reasons set forth below.  See infra n.6. And while the defendants assert that the plaintiff's claims against Secretary Chu should be dismissed both "for lack of subject[-]matter jurisdiction and for failure to state a claim upon which relief can be granted," Defs.' Mem. at 2, "[t]he judicial review provisions of the APA are not jurisdictional," Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO, 498 U.S. 517, 523 n.3 (1991).[6]  Accordingly, the Court addresses the only standard of review actually

---

[6] The Court recognizes that the District of Columbia Circuit has described the exhaustion requirements of the APA as "jurisdictional" on at least one prior occasion.  See, e.g., Balt. Gas and Elec. Co. v. FERC, 252 F.3d 456, 458 (D.C. Cir. 2001) ("The ban on judicial review of actions 'committed to agency discretion by law' [under 5 U.S.C. § 701(a)(2)] is jurisdictional. . . . That is, Congress has not given the courts the power to hear challenges to an agency's exercise of the discretion with which Congress has entrusted it.").  However, the Supreme Court has since cautioned against "drive-by jurisdictional rulings that should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit," Arbaugh v. Y&H Corp., 546 U.S. 500, 511 (2006) (internal citation and quotation marks omitted), and the District of Columbia Circuit has more recently followed the lead of the Supreme Court in describing the requirements for judicial review set forth in the APA as non-jurisdictional.  See, e.g., John Doe, Inc. v. DEA, 484 F.3d 561, 565 (D.C. Cir. 2007) ("When judicial review is sought under the APA, . . . the requirement of 'final agency action' is not jurisdictional."); Center for Auto Safety v. Nat'l Highway Safety Admin., 452 F.3d 798, 805 (D.C. Cir. 2006) ("[I]n cases . . . in which judicial review is sought under the APA rather than a particular statute prescribing judicial review, the requirement of final agency action is not jurisdictional.").  As the exhaustion requirements of the APA are denominated as "except[ions]," 5 U.S.C. § 701(a), to the other "judicial review provisions of the APA," Air Courier Conference, 498 U.S. at 523 n.3, (continued . . . )

governing the disposition of the defendants' motion: the standard governing a motion to dismiss for failure to state a claim under Rule 12(b)(6).

On a motion to dismiss under Rule 12(b)(6), the Court "must treat the complaint's factual allegations as true and must grant [the] plaintiff the benefit of all reasonable inferences from the facts alleged" in considering motions to dismiss under Rule 12(b)(6).  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citation and quotation marks omitted).  The Court may only consider the facts alleged in the complaint, any documents attached as exhibits thereto, and matters subject to judicial notice in weighing the merits of the motion.  EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997).  The Court's focus is therefore restricted to the facts as alleged by the plaintiff, which must be sufficiently detailed "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007).

### III. Legal Analysis

Based upon the positions taken by the parties in their respective memoranda of law, the issues before the Court fall into two discrete categories.  The first issue, which runs through all of the arguments made by the parties with respect to the plaintiff's claims against Secretary Solis, is whether the Department of Labor satisfied its regulatory obligations regarding the plaintiff's coverage determination request when the Acting Wage and Hour Administrator issued his ruling on April 19, 2006, denying the plaintiff's request as moot.  The second issue is whether the Department of Energy's decision to sell parcels of property to a private developer without ensuring that any construction contracts entered into by the developer observe the provisions of the Davis-Bacon Act gives rise to an immediate cause of action under the APA or

---

by the statute itself, it stands to reason that those exceptions must be non-jurisdictional as well.  The Court will therefore treat them as such.

10

is instead a preliminary decision that must first be challenged through the administrative process. The Court considers each of these issues in turn.

A.Claims Against Secretary Solis (Counts I-III)

Counts I through III of the plaintiff's amended complaint turn on the notion that the Department of Labor has unlawfully refused to rule on the merits of the plaintiff's request for a determination as to whether the Davis-Bacon Act applies to the buildings constructed at the ORNL from 2001-2003. Pursuant to 5 U.S.C. § 555(b), an agency covered by the APA must "proceed to conclude a matter presented to it" "within a reasonable time," and if the "agency action" is "unlawfully withheld or unreasonably delayed," a "reviewing court" may compel the agency to act, 5 U.S.C. § 706(1). "Were it otherwise, agencies could effectively prevent judicial review of their policy determinations by simply refusing to take final action." Cobell v. Norton, 240 F.3d 1081, 1095 (D.C. Cir. 2001).

Courts in this circuit "assess several factors in order to determine whether an agency's delay is 'unreasonable.'" In re Int'l Chem. Workers Union, 958 F.2d 1144, 1149 (D.C. Cir. 1992).

> First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act. . . . Second, the reasonableness of the delay must be judged in the context of the statute which authorizes the agency's action. . . . Third, the court must examine the consequences of the agency's delay. . . . [And f]inally, the court should give due consideration in the balance to any plea of administrative error, administrative convenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources.

Id. (internal citation and quotation marks omitted).

Here, more than five years passed from the date of the plaintiff's first request for a coverage determination of the ORNL construction project undertaken by the Department of

11

Energy in 2001 and the filing of the plaintiff's initial complaint in this Court. A delay of that duration is completely contrary to the statutory scheme giving rise to the Department of Labor's oversight obligations, which presupposes that a determination as to whether the Davis-Bacon Act applies to a particular contract will take place prior to the execution of the contract, see 40 U.S.C. § 3142 (setting forth requirements for prospective "contract[s] . . . to which the Federal Government . . . is a party" for the "construction, alteration, or repair . . . of public buildings and public works"), and provides no remedial relief other than that set forth in the contracts themselves, id. §§ 3143-44. Indeed, the Acting Wage and Hour Administrator's eventual determination that the plaintiff's claim was moot suggests that the Department of Labor's delay inured to its own benefit insofar as it obviated the need for any determination on the merits of the plaintiff's coverage determination request, and there is no suggestion in the record before the Court that this delay was due to any special difficulties faced by the Department of Labor in rendering its decision. Thus, there is little question that, as of the date of the commencement of this lawsuit, the Department of Labor had "unreasonably delayed" its ruling on the plaintiff's Davis-Bacon coverage determination request.

      The problem for the plaintiff is that its request to remedy this delay is moot. A claim is moot "if the judgment, regardless of which way it goes, will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," Noble v. Sombrotto, 525 F.3d 1230, 1241 (D.C. Cir. 2008) (internal citation and quotation marks omitted); i.e., "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (internal citation and quotation marks omitted). The mootness doctrine is distinct from that of standing only in that "the standing inquiry remains focused on whether the party invoking

jurisdiction had the requisite stake in the outcome when the suit was filed," Davis v. FEC, ___ U.S. ___, ___, 128 S. Ct. 2759, 2769 (2008), whereas "[a] court determines whether a case is moot at the time of review and not at the time of filing," Mogu v. Chertoff, 550 F. Supp. 2d 107, 110 n.5 (D.D.C. 2008).

In Counts I through III of its amended complaint, the plaintiff asks that the Court compel a ruling from the Department of Labor on its Davis-Bacon coverage determination request. The Department of Labor has issued just such a ruling in the form of its Acting Wage and Hour Administrator's April 19, 2006 letter. Thus, the plaintiff lacks any "legally cognizable interest" in having the Court determine whether the Department of Labor's delay in responding to the plaintiff's inquiries was unreasonable. In other words, its request for injunctive relief compelling Secretary Solis to act on its Davis-Bacon coverage determination request, whether articulated as a cause of action arising under the APA or as a petition for the writ of mandamus, is moot. See James Luterbach Constr. Co., Inc. v. Adamkus, 781 F.2d 599, 602 (11th Cir. 1986) (holding that request for declaratory judgment regarding applicability of federal regulations to construction contract by the Environmental Protection Agency was moot once construction was completed).[7]

The plaintiff argues that the Acting Wage and Hour Administrator's April 19, 2006 letter did not "actually respond[]" to the plaintiff's request for a Davis-Bacon coverage determination because the Acting Wage and Hour Administrator did not decide the merits of the plaintiff's request, choosing instead to deny the request as moot. Pl.'s Opp'n at 12. But the plaintiff cites to no statutory or regulatory authority requiring the Department of Labor to rule on the merits of every wage determination request submitted to it. To the contrary, "an agency has 'substantial

---

[7] Because the plaintiff's petition for the issuance of a writ of mandamus compelling Secretary Solis to consider the plaintiff's request for a Davis-Bacon coverage determination is moot as well, the Court does not address the merits of that request.

discretion' to decide whether to hear issues which might be precluded by mootness." RT Commc'ns, Inc. v. FCC, 201 F.3d 1264, 1267 (10th Cir. 2000) (internal citation and quotation marks omitted). And while "[t]he subject matter of agencies' jurisdiction naturally is not confined to cases or controversies inasmuch as agencies are creatures of [A]rticle I [of the Constitution]" as opposed to Article III, Tenn. Gas Pipeline Co. v. Fed. Power Comm'n, 606 F.2d 1373, 1380 (D.C. Cir. 1979), "[an] agency's determination of mootness is informed by an examination of the proper institutional role of an adjudicatory body and a concern for judicial economy," Climax Molybdenum Co. v. Sec'y of Labor, 703 F.2d 447, 451 (10th Cir. 1963). Consequently, "an agency acts within its discretion in refusing to hear a case that would be considered moot if tested under the Article III 'case or controversy' requirement." Id.

It may be that the Acting Wage and Hour Administrator's mootness determination is, as the plaintiff describes it, nothing more than "a post hoc rationalization for [the] Secretary of Labor's unlawful and unreasonable failure to respond to [the plaintiff's] June 25, 2001 request for a Davis-Bacon coverage determination." Pl.'s Opp'n at 12. But if the Department of Labor has somehow abused its discretion in denying the plaintiff's request as moot, the proper course of action is for the plaintiff to challenge the merits of that conclusion under 5 U.S.C. § 706(2), not to force the Department of Labor to issue new decisions in response to the plaintiff's request until it receives one it deems satisfactory. Therefore, Counts I through III of the plaintiff's amended complaint must be dismissed as moot.

B.     Claims Against Secretary Chu (Counts VI-VII)

Counts VI through VII of the plaintiff's amended complaint concern the Department of Energy's purported "fail[ure] to insure that a provision mandating compliance with the prevailing wage requirement in the Davis-Bacon Act is incorporated in each of the contracts and

subcontracts for construction of two buildings . . . within the boundaries of the Y-12 National Security Complex," Compl. ¶ 62; see also id. ¶ 69 (same), which the plaintiff casts as an abuse of the Department of Energy's discretion under the APA. As the Court noted above, the defendants seek to dismiss these claims on the grounds that the Department of Energy has not issued a "final decision" subject to APA review and that the plaintiff has not exhausted its administrative remedies. Defs.' Mem. at 25-30; Defs.' Reply at 6-13. "[T]he concepts of 'final decision' and 'exhaustion' are often closely intertwined and sometimes confused," but the concepts "are not identical, . . . no matter how often they converge." Daniels v. Union Pac. R. Co., 530 F.3d 936, 940 n.9 (D.C. Cir. 2008) (internal citation and quotation marks omitted). As the Supreme Court explained in Darby v. Cisneros, 509 U.S. 137 (1993):

> The finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

Id. at 144.

With respect to the issue of finality, § 10(c) of the APA, codified as 5 U.S.C. § 704, provides:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

15

The APA defines the term "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. § 551(13); i.e., actions by an agency that are "circumscribed" and "discrete." Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 62 (2004). As for finality, "two requirements must be satisfied . . . : [f]irst, the action must mark the 'consummation' of the agency's decisionmaking process, . . . [a]nd second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett v. Spear, 520 U.S. 176, 177-78 (1997) (internal citation and quotation marks omitted). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." Franklin v. Massachusetts, 505 U.S. 788, 797 (1992); see also Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs, 417 F.3d 1272, 1278 (D.C. Cir. 2005) ("[A]n agency action is final if . . . it is 'definitive' and has a 'direct and immediate . . . effect on the day-to-day business' of the party challenging it . . . ." (quoting FTC v. Standard Oil Co., 449 U.S. 232, 239 (1980) (internal citation and quotation marks omitted))).

The defendant argues that the plaintiff has failed to allege any final agency action on the part of the Department of Energy "because they [were] subject to administrative review by the Secretary of Labor." Defs.' Mem. at 26-27. They note that pursuant to 29 C.F.R. § 5.13, "any party dissatisfied with an agency's [Davis-Bacon Act] coverage determination [must] bring that dispute before the Wage and Hour Administrator," id. at 27, then "file an[y] appeal with the Administrative Review Board," id. at 28 (citing 29 C.F.R. § 7.9), and contend that "[i]n light of [these] regulations, there is no question that the opinions of the [Department of Energy's] contracting officials do not constitute a 'final order' of the Secretary of Energy that may be reviewed immediately by a federal district court," id.

16

This argument runs afoul of the plain language of § 704. That section expressly provides that "agency action otherwise final is final for the purposes of this section whether or not there has been . . . an appeal to superior agency authority" except where that review is (1) "require[d] by rule" and (2) the rule "provides that the action meanwhile is inoperative." 5 U.S.C. § 704. As the plaintiff correctly notes, "[t]here is no provision in [the] Secretary of Labor's regulations[] [that] provides a procedure that effectively renders inoperative an initial decision by [the Department of Labor] . . . concerning [the] application and interpretation of the Davis-Bacon Act when the Wage and Hour Administrator is asked to . . . issue a ruling or determination." Pl.'s Opp'n at 40-41.

The defendants do not dispute this point. Rather, they argue that the "Wage and Hour Administrator has the authority to require that the contracting agency terminate and resolicit the contract with the valid wage determination," and may "require the agency to incorporate the valid wage determination retroactive to the beginning of the construction." Defs.' Reply at 12 (citing 29 C.F.R. § 1.6(f) (2008)). Assuming this is so, that authority still does not satisfy § 704's requirement "that the action . . . is inoperative" while it is subject to review by the "superior agency authority," and therefore does not render any action by the Department of Energy "non-final" for purposes of § 704.

Instead, it is the second requirement of finality—that the agency action have "a 'direct and immediate . . . effect on the day-to-day business' of the party challenging it," Nat'l Ass'n of Home Builders, 417 F.3d at 1278 (quoting Standard Oil Co., 449 U.S. at 239 (internal citation and quotation marks omitted))—that derails the plaintiff's claims against Secretary Chu. The problem for the plaintiff is that it is neither involved in nor directly affected by the "Secretary of Energy's sale of land [at the] NNSA's Y-12 National Security Complex," which is the only

17

"agency action" by the Department of Energy challenged by the plaintiff.  Pl.'s Opp'n at 34.[8]  Instead, its "rights" will only be "determined," Bennett, 520 U.S. at 178, when the purchaser of the land for sale at the Y-12 National Security Complex enters into a construction contract with a third party and either does or does not require the contractor to observe the requirements of the Davis-Bacon Act.  Until the purchaser actually fails to impose this requirement on the construction contractor, there will be no "actual, concrete injury" suffered by the plaintiff. Darby v. Cisneros, 509 U.S. at 144.

   Due to the lapse in time between the date when the plaintiff's opposition to the defendant's motion to dismiss was filed (July 28, 2006) and the issuance of this memorandum opinion,[9] it may well be the case that the Department of Energy has since sold the parcels in question and that the purchaser has contracted for construction on those parcels.  But even if this is the case, and even if the purchaser did not require the construction contractor to abide by the requirements of the Davis-Bacon Act, those events would not make any action taken by the Department of Energy final with respect to the plaintiff.  Rather, under those circumstances the purchaser would be the entity engaging in some final action with respect to the plaintiff.  Such an action would not, however, be subject to scrutiny under the APA because the statute provides

---

[8]  As the Court noted above, the plaintiff describes the "agency action" taken by the Department of Energy somewhat differently in its amended complaint, identifying the "agency action" at issue as the Department of Energy's "fail[ure] to insure that a provision mandating compliance with the prevailing wage requirement in the Davis-Bacon Act is incorporated in each of the contracts and subcontracts for construction of two buildings . . . within the boundaries of the Y-12 National Security Complex."  Compl. ¶ 62; see also id. ¶ 69 (same).  But whether framed as a "fail[ure] to insure" a particular result or as a simple sale of real estate, the bottom line is the same: the rights of the plaintiff's constituents will not be "denie[d]," nor their "legal relationship" with the owner of any land upon which buildings are being constructed at the Y-12 National Security Complex "fixe[d]," Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n, 324 F.3d 726, 731 (D.C. Cir. 2003), until the owner contracts for construction of the building without requiring the contractor to observe the requirements of the Davis-Bacon Act.

[9]  The long delay in the issuance of this memorandum opinion was due in large part to the high volume of cases pending before this Court and in part due to an internal recordkeeping error in this Court's Chambers that has since been corrected.  The Court regrets any inconvenience caused by this delay.

relief only to "[a] person suffering legal wrong . . . or adversely affected or aggrieved by <u>agency</u> action," 5 U.S.C. § 702 (emphasis added), and the purchaser of the buildings in question, at least according to the plaintiff, would have been a "private[,] non-profit corporation," Compl. ¶ 38.

This does not, however, foreclose relief under the APA to the plaintiff. As the plaintiff is well aware, it can request a determination from the Department of Labor as to whether the Davis-Bacon Act applies to any construction contracts entered into by purchasers of any real property at the Y-12 National Security Complex pursuant to 29 C.F.R. § 5.13. If the Department of Labor does not rule on the plaintiff's request in a timely manner, the plaintiff can request relief from this Court pursuant to 5 U.S.C. § 706(1). And if the Department of Labor issues a ruling that the plaintiff believes is arbitrary and capricious, it can request relief from this Court pursuant to 5 U.S.C. § 706(2), just as it has done in Counts IV and V of its amended complaint. But the Court cannot enjoin or declare unlawful activity by an agency that does not definitively injure the plaintiff in any way. Counts VI throughVII of the amended complaint must therefore be dismissed.

## IV. Conclusion

In some respects, the arguments resolved by the Court today are much ado about nothing. Counts IV and V of the plaintiff's amended complaint, which the defendants have not challenged, directly address the reasonableness of the Acting Wage and Hour Secretary's decision to reject the plaintiff's request for a Davis-Bacon coverage determination as moot. And if the Court were to conclude that the Davis-Bacon Act gives rise to a private right of action, Count VIII of the amended complaint would put the coverage determination issue squarely before the Court, which would appear to be the result desired by the plaintiff all along. Therefore, in addition to granting the defendants' motion to dismiss and dismissing Counts I

through III and VI and VII of the plaintiff's amended complaint, the Court will order the parties to file a joint proposed briefing schedule to address the viability of Counts IV, V, and VIII of the amended complaint so that the Court can bring this case to a final resolution.

**SO ORDERED** this 4th day of March, 2009.[10]

REGGIE B. WALTON<br>
United States District Judge

---

[10] An order will be entered contemporaneously with this memorandum opinion (1) granting the defendants' motion to dismiss, (2) dismissing Counts I through III and V through VII of the plaintiff's amended complaint, and (3) directing the parties to file a joint proposed briefing schedule within thirty days of the entry of the order.